# Louisville & Nashville Railroad Co. *v.* Boland.

*Action for Damages Against Employer, by Injured Brakeman.*

1. *Dangerous car-coupling; negligence per se.*—It is not negligence *per se* in a railway company to receive from other companies, and haul over its own track, cars having different styles of coupling from those in use on its own cars, and which increase the hazard of coupling.

2. *Same; warning employe of increased hazard.*—Where the increased hazard of coupling such cars received from other companies is open to the ordinary observation of any person using reasonable care and prudence, the failure of the railway company to instruct or warn a brakeman specially in regard to the increased risk of coupling such cars is not negligence on the part of the railway company, where the brakeman had been warned more than once that coupling cars was attended with special risk, and that it was necessary he should use very great care and particularity in that service, and was notified that the company hauled cars of different construction, and with different coupling apparatus.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave the following written charge: "The court charges the jury that it is for the jury to determine from all the evidence whether the defendant was negligent, and whether the injury to the plaintiff resulted from such negligence." The defendant excepted to the giving of this charge, and also excepted to the court's refusal to give the following written charge requested by it: "If the jury believe the evidence in this case, they must find for the defendant." Verdict and judgment having been rendered for the plaintiff, the defendant moved the court to set aside such verdict and judgment, and for a new trial, upon the following grounds: "(1.) The damages are excessive; (2.) The verdict is contrary to the evidence, and against the weight of the evidence; (3.) The verdict is contrary to the law and the evidence; (4.) The verdict is contrary to the law; (5.) The court erred in its charge to the jury; (6.) The verdict was contrary to the charge of the court and evidence in the case." The court overruled this motion, and to this action of the court the deendant duly excepted. Defendant appeals.

[Louisville and Nashville Railroad Co. v. Boland.]

HEWITT, WALKER & PORTER, for appellant, cited Code, § 1165; *Michigan Central R. R. Co. v. Smithson*, 45 Mich. 212; *Huthaway v. Michigan Central R. R. Co.*, 51 Mich. 253.

L. C. DICKEY, J. F. GILLESPIE, and TALIAFERRO & HOUGHTON, *contra.*—It is the duty of employers to inform servants of extra hazard or danger.—*Missouri Pacific R. R. Co. v. White*, 76 Tex. 102; s. c. 18 Am. St. Rep. 33; *Brennen v. Gordon*, 16 Am. St. Rep. 775, and note; Wood on Master and Servant, 714. Failure to warn of danger in service is negligence.—*Jones* v. *Florence Mining Co.*, 66 Wis. 268; s. c. 57 Am. Rep. 269; *Towns' case*, 55 Am. Rep. 508; *Hall v. L. & N. R. R. Co.*, 87 Ala. 719; 14 Am. & Eng. Ency. of Law, 897. The question of negligence *vel non* in this case was properly left to the jury.—*Penn. Co. v. Long*, 15 Am. & Eng. R. R. Cases, 345; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 13; *L. & N. R. R. Co. v. Allen*, 78 Ala. 494.

THORINGTON, J.—Appellee brought suit against the Louisville & Nashville Railroad Company to recover damages for an injury sustained by him while in the company's employment as a brakeman.

At the time of his employment he was about twenty-six years of age and without experience in the railroad business. When the injury complained of was received he had been acting as a brakeman on construction trains on appellant's mineral road for about four weeks, and during that time had exhibited skill and dexterity in coupling cars. At the beginning of his employment he was instructed generally that railroading was a dangerous employment, and that coupling cars was specially dangerous, and to be done with great care and particularity. On being transferred from the first construction train, on which he had been employed for about two weeks, to another train of the same class, he was again instructed by his conductor that "coupling cars was a very dangerous business, and that he should use great care in making couplings." He was also informed that "there were cars on the company's line of railroad with different styles of couplings, and that he must be very particular and careful in coupling cars."

After appellee had been in service as such brakeman for three or four weeks, he was called upon to couple two cars having "double-deadwoods" or "buffers," and which cars belonged to another system of railway, but were then being hauled over appellant's road. These "double-deadwoods" or "buffers" are horizontal timbers at the end of the car,

projecting, one on each side of the drawhead, the latter extending three or four inches beyond the deadwoods. In coupling, the drawhead yields to the impact of the two cars, and the deadwoods or buffers of the opposing cars coming together arrest the force of the blow. The coupling is done by holding the coupling pin with one hand above the deadwoods or buffers while the link is guided by the other hand underneath the deadwood or buffer. Coupling cars of this kind is more dangerous, according to the proof, than coupling those without buffers or deadwoods. Appellee had never seen a car with a coupling of this pattern although the company frequently used such cars on its line; that is, hauled cars of that kind for other railroads. The testimony for appellee showed that he was compelled to make the coupling in a hurry, and that the cars came together quickly and with force, and that he did not observe that the construction of the cars or their coupling was different from those to which he had been accustomed. On the other hand, appellant's testimony shows that appellee was not hurried in making the coupling, that the deadwoods or buffers were plainly open to observation, and that the increased danger was patent. Appellee undertook to make the coupling as he would have done with ordinary cars, and his arm was caught and crushed between the buffers, causing permanent injury.

The negligence alleged, and on which the right of recovery is based, is the negligence of the company in hauling on its line the cars of another company so constructed as to render coupling more hazardous than it is with appellant's cars, and in not instructing appellee specially as to the increased danger in coupling cars with double deadwoods or buffers.

The questions reserved for review in this court are the exceptions of appellant to the charge given by the court at the instance of appellee, the refusal of the court to give the general charge for appellant, and the denial by the court of appellant's motion for a new trial. The ruling of the court upon the charges is involved in the correctness of its ruling in denying the motion for a new trial, and we shall address ourselves to the determination of that question, without specially noticing the others.

It is the duty of the master to furnish his employees, for use in the prosecution of his business, safe and suitable machinery, and to keep the same in good repair. But this duty is not an absolute one, and is discharged when the master exercises reasonable care and prudence in selecting machinery and appliances for the servant's use, in view of the nature of the business or employment and the incidental
Vol. 96.

[Louisville and Nashville Railroad Co. v. Boland.]

hazards. No rule of law imposes upon the master the duty to select the latest and most approved machinery, but only such as is suitable for the purpose for which it is employed. And in selecting which of several styles of machinery or apparatus he will use in his business the discretion of the master is absolute, subject alone to the exercise of reasonable care and prudence.—*Kehler v. Schwenk*, 13 Lawyers' Rep. Ann. 374 and notes; Woods' Master & Serv. §§ 331, 332: *Smoot v. Mobile & Montgomery Ry. Co.*, 67 Ala. 13. There is an entire absence of proof showing that the coupling or double buffers to the cars which caused the injury to appellee were defective or out of repair, or that they were discarded or prohibited on well regulated railways, or that they were unsuited to the service; but it does appear that they are a style of coupling used on one at least of the great railway systems of this country, and that cars so constructed were frequently hauled or transported over appellant's road. Nor does appellee base the charge of negligence on the fact of the coupling to said cars being defective or out of repair, or unsuited to the business, but on the alleged fact that cars with that style of coupling, are more dangerous to couple than those belonging to appellant, and the testimony sustains that charge.

The question, therefore, is presented whether it is negligence *per se* in a railway company to receive from other companies, and haul over its own track, cars having different styles of coupling from those in use on its own cars, and which increase the hazard of coupling.

It may be said it is a matter of common knowledge that the demands and exigencies of commerce require in the transportation of freight that the cars of one company shall be hauled over the road of another, and that, in order to meet this demand, the guage of the tracks of the great trunk lines has been made uniform. This necessity has been recognized and provided for by statute in many of the States, including Alabama. Section 21 of Art. XIV of the Constitution, and section 1165 of the Code of 1886, carrying the same into effect, make it mandatory on a railroad, when required, to transport or draw over its lines the passengers, freight or cars of any intersecting or connecting road, on reasonable terms, provided such cars are adapted to the guage of its track, are sufficiently strong, and otherwise in proper condition for safe transportation. Probably in no other matter pertaining to the machinery or apparatus used in the railroad business has human ingenuity and invention been so frequently and constantly taxed as in the efforts to

improve car couplings, and lessen the danger of that particular employment, which, under the best conditions, is known to be attended with much hazard. As a result of this, the taste and judgment of the managers of railroads in selecting styles or patterns of coupling, it has been said, have been as varied as the ingenuity of others in their invention, and, consequently, not only do such patterns vary on different roads, but sometimes on the same road. Cars of these different patterns carrying through freight so often pass from one road to another that the extra hazard thereby occasioned in handling them by employees ought to be considered, and, we may say, is one of the risks or dangers nécessarily incident to the employment or business, and which the servant must be deemed to have assumed at the time of entering the service.

In determining the question of negligence on the part of the company, in such cases, the question is not whether the couplings of the cars so received upon its road are different from those on its own cars, or whether they are the best in use, or whether they increase the hazard of coupling cars, but whether they are reasonably suited or adapted to the use to which they are applied. To say that a certain style or pattern of coupling increases the hazard, if it is reasonably adapted to the purpose intended, or one that a railway company in the exercise of reasonable care and prudence would adopt, is simply to say that it requires greater care and skill on the part of the brakeman in using it than a coupling of a different pattern. While, as we have said, the duty rests on the master to provide safe and suitable machinery in the prosecution of his business, the presumption is he has performed that duty, and the burden is on the injured employe to show negligence in the discharge of such duty. So, likewise, it is the duty of a railroad company, under section 1165 of the Code, to which we have referred above, to receive from a connecting line of railway such cars only as are adapted to to the guage of its tracks, that are sufficiently strong and otherwise in proper condition for safe transportation, and when it receives a car on its line from such other company the presumption is that it meets the above requirements; if it does not, and an employe is injured in consequence thereof, the burden is on him to show negligence on the part of the railway company in receiving or hauling a car not in proper condition for transportation over its road.

We have stated that the proof fails to point out any defect or fault in the coupling apparatus of the two cars in

[Louisville and Nashville Railroad Co. v. Boland.]

question, or that the pattern of coupling on them was unsuited to the business, and we may now go further and say the proof also fails to show that such cars were not adapted to the guage of appellant's track, or not sufficiently strong or otherwise not in proper condition for safe transportation, but, on the contrary, it is shown that they have been frequently hauled over appellant's line. If, therefore, as we have indicated, the mere fact of the cars having couplings of a different construction from those of appellee's cars, and which required greater care and prudence in hauling them, did not *per se* make it negligence for appellant to haul them on its road, then appellee fails in his proof to support the charge of negligence based on those facts.

We have carefully investigated the question arising on these facts and, with one exception, the authorities hold that it is not negligence in a railway company to haul cars of another company with double deadwoods or double buffers, while couplings of a different pattern are in use on its own road. The cases which support this view are the following: *Pittsburg & Lake Erie Ry. Co. v. Henly*, 15 Lawyers Rep. Ann. 384, (Sup. Ct. Ohio); *Mich. Cent. R. R. Co. v. Smithson*, 45 Mich. 212; *Hathaway v. Mich. Cent. Ry. Co.*, 51 Mich. 251; *Ind. Bloomington, &c. R. R. Co. v. Flanigan*, 77 Ill. 365; *Baldwin v. T. C. R. I. & P. R. Co.*, 50 Ind. 680. In the case last cited the act of negligence complained of was that the defendant received on its tracks cars of another company on which the "couplings, bumpers or chafing irons," commonly called "deadwoods," were not the usual ones in use on its road, nor such as had been in use thereon at any time during which the plaintiff had been in defendant's employ, and that the same were of an "old and unusual pattern not now in use on the cars of the defendant, and were imperfect and defective." The plaintiff had only been working for the defendant three or four days when he was injured while coupling the cars of another company with double deadwoods which had been taken on its track with through freight. It was held that the defendant was not guilty of negligence in taking upon its track cars of that description, and that the additional danger from such cars "must be regarded as ordinary and incidental to the business." In the case of *Indianapolis, Bloomington and West. Ry. Co. v. Flanigan*, a similar question is elaborately discussed, and it is there held that a railroad company will not be liable to an employe for personal injury received while coupling cars having double buffers, simply because a higher degree of care is required in using them than in those differently constructed.

Appellee, however, urges further that if it was not negligence in appellant to have such a car on its track, it was appellant's duty to specially instruct him of the increased danger in coupling cars of that description, he being inexperienced in the business. It is unqestionably a high and binding duty of a master in assigning a young or inexperienced servant to work at or about dangerous machinery to give such servant detailed and special warning or instruction as to all *latent* dangers not discoverable by the exercise of reasonable and ordinary care on the part of the servant, but no principle of law imposes on the master the duty to explain to the servant patent dangers which are ordinarily incident to the service, and which it may reasonably be expected, under the circumstances, the servant can see and appreciate. The duty of the master, in cases of latent defects, to explain, is the same whether the servant be a minor or an intelligent adult; the difference being, however, that as great diligence in observing and comprehending the dangers is not to be expected of the young and inexperienced. The latter, as much as intelligent adults, are held on entering a particular service to have assumed the ordinary hazards incident to such service, including the risks of injury from open defects in machinery and appliances. As to latent risks, the duty of the master is not dischared when he simply instructs the servant in a general way that the service engaged in is dangerous, and especially is this true where the servant is a person who from inexperince or want of education would not likely have knowledge of such latent risks. In such cases he should not only be instructed that the service is dangerous, but, where extraordinary risks are to be encountered, he should be warned by the master, as far as possible, of their character and extent, if known to the master, or should be known to him. But, as we have said, this duty is required only as to *latent* dangers or risks, and we know of no rule or principle of law that requires the master to give any express or particular instructions to guard against such dangers as are manifestly obvious.

In *Holland v. Tenn. Coal, Iron & R'y. Co.*, 91 Ala. 444, this court uses the following language :

"Whether the defendant was negligent or not in failing to notify and instruct the intestate and his fellow servants as to the dangers of the work they were directed to do depends upon the further consideration whether the peril involved in it was patent or latent,—such as could be seen and known by ordinary care and prudence in the use of

[Louisville and Nashville Railroad Co. v. Boland.]

the senses, or such as was obscured, and could not be appreciated. If the former, the law is well settled that the master need not advise his servants of its existence, and instruct them as to the means necessary to its avoidance, since they, equally with himself, are held to know both the fact of peril and how to avoid or escape it. . . . On the other hand, it is the imperative duty of the master to inform the servant of all latent dangers incident to the service, and instruct him as to their avoidance." What we have said on this subject is further supported by the following authorities : *Smith v. Peninsular Car Works*, 60 Mich. 501 ; *Fones v. Phillips*, 39 Ark. 17 ; *Buckley v. G. P. & R. M. Co.* 113 N. Y. 540.

In the case we are now considering the plaintiff in the action is not a minor, but was at the time of the injury twenty six years of age, and, in the absence of proof to the contrary, it must be presumed that he was of average intelligence. He had been warned more than once that railroading was a dangerous business, and that coupling cars was attended with special risk, and that it was necessary he should use very great care and particularity in that service, and, furthermore, he was notified that the company hauled cars of different construction and with different coupling apparatus. The double buffers, or deadwoods, were so located with reference to the drawhead that it was impossible to see one without the other. They were on each side of the drawhead, and projected to within about three inches of the same' length as the drawhead. A view of the buffers and drawhead as attached to the car should be sufficient notice to a man of average intelligence of the risk incident to the coupling of such a car. Ordinary observation could not fail to disclose to appellee the difference between the appliances for coupling these cars and those on appellant's cars, and that a higher degree of care was necessary on his part. In Hathaway's case, above cited, it is said in referring to the case of *Mich. Cent. R. R. Co. v. Smithson* : "In that case the plaintiff claimed the same kind of negligence on the part of the defendant as a ground of recovery as in this ; and the plaintiff's own view of the cars, deadwoods and couplings, at the time of the injury was held to be all the notice that was necessary to be given by the company, and that the plaintiff could not recover. The correctness of that decision is not questioned, but admitted by the plaintiff's counsel in this case, and the only difference claimed between the two cases is that in the Smithson case the coupler injured had long experience in

coupling, and in the present case he had little or none at all. This fact, if admitted, can not make this an exception to the rule. If the character of any particular danger is so simple that it can as well be ascertained at a single view as at many, it is difficult to see how additional observation could be of any benefit to the party whose duty it is to encounter it."

True, there is testimony tending to show that appellee was hurried in making the coupling, and that the two cars were only about four feet apart when he stepped in to make the coupling, and that the engineer brought them together with much force. Without referring to the testimony contradictory of these statements, it may be remarked that the negligence of the engineer can not be looked to either to defeat or support this action. It is a question of the negligence of the company, and not of appellee's co-employees. If the engineer brought the cars together so hurriedly that appellee did not have time to observe the particular style or pattern of coupling with which they were furnished, and he was thereby injured, that would not affect the question whether the company was negligent in using or having on its road cars of that particular pattern, or whether plaintiff had been properly instructed as to the risks of his employment. If, as we have shown, it was not incumbent on appellant to specially instruct appellee as to these particular couplings, because such risk was open to ordinary observation, the act of the engineer in depriving the plaintiff of the opportunity to make such observation is not the negligence of the company; although it might, if appellee was himself without fault, support an action under the employes' statute, on proper averment and proof that the engineer sustained towards him such a position as would make the company liable, under the terms of the statute, for the negligence of such engineer resulting in injury to his co-employe. The authorities we have cited, with the single exception, we believe, of the case of *Mo. Pac. Ry. &c. Co. v. White*, 76 Texas 102, cited by appellee, are clear and uniform on the propositions discussed, and are in accord with our view of the law applicable to this case.

Our conclusion is that on the undisputed testimony showing the structure, nature and office of the double deadwoods or double buffers, and that cars of that description were frequently hauled over appellant's tracks, and, in the absence of all proof showing that the particular coupling apparatus was defective or out of repair, or unsuited to the purpose intended, or that the car was unsafe for transportation over appellant's road, it results as matter of law that it

[Louisville and Nashville Railroad Co. v. Boland.]

was not negligence in appellant to receive or transport such car over its tracks. And it likewise appearing that the increased hazard in coupling such cars was open to the ordinary observation of any person using reasonable care and prudence, it further results that it was not negligence on the part of appellant in not instructing or warning appellee specially in regard to the increased risk in coupling cars with double deadwoods or double buffers, such increased risk being, under the circumstances, incident or ordinary to the risks assumed by appellee on entering appellant's employment, and merely calling for the exercise of a higher degree of care and prudence on the part of appellee in discharging his duties than when coupling cars of the style generally in use on defendant's road.

The general charge requested by the defendant should have been given, and its motion for a new trial should have been granted.

The judgment of the Circuit Court will be reversed, and the cause remanded.

Reversed and remanded.