# Louisville & Nashville R. R. Co. v. Binion.

*Action by Employe to Recover Damages for Personal Injuries*

1. *Physical suffering may be considered in estimating damages to employe for personal injuries.*—In an action by an employe to recover damages against a railroad company for personal injuries, the pain and suffering to which the plaintiff was subjected from the injury, constitute an element of damage proper to be considered by the jury in rendering a verdict.

2. *In action by employe for personal injuries plaintiff can not prove that he has a family.*—In an action by an employe to recover damages for personal injuries it is not competent for him to testify what family he has, since the damages allowed are for the injury inflicted on him and not on his family.

3. *Exception to question will not avail on appeal where the record fails to show the question was answered.*—Where a question is asked a witness, although illegal, and is excepted to, the exception can not avail on appeal if the question was not answered, as no damage could result.

4. *Assignments of error on testimony must be based on exceptions shown by the record.*—In an action at law for damages for personal in-

[Louisville & Nashville R. R. Co. v. Binion.]

juries, assignments of error directed to rulings of the trial court on the admission of evidence, will not be noticed unless such assignments are based on exceptions shown by the record.

5. *Expert may testify that a "stuck brake" will let off suddenly and violently.*—In an action by an employe against a railroad company for personal injuries, where the complaint claimed the injury resulted from a brake letting off suddenly and violently, and a witness is shown to be an expert, he may be asked by the plaintiff "Isn't it a fact that when a brake gets stuck, it lets off violently and suddenly?"

6. *Not error to overrule objections to testimony when grounds thereof are not stated.*—Objections to the admission of testimony are properly overruled when the grounds of such objection are not stated.

7. *Duty of railroads as to use of safe appliances and of instructing employe as to inherent dangers.*—Where hand brakes are in use by a railroad company some of which have stiff, and others limber staffs, differing from each other only in the size of their staffs, and the limber ones are shown to be inherently dangerous in the hands of inexperienced brakemen, ignorant of how to handle them, it is the duty of the company to use the less dangerous kind, or to warn the inexperienced operator of the increased danger from the use of the more dangerous brakes.

8. *Duty of employer to warn employe of latent risks.*—The duty of an employer, in cases of latent defects, to explain, is the same whether the servant be a minor or an intelligent adult.

9. *Charge of court as to proof of defective brake.*—In an action by an employe against a railroad company for injuries caused by a defective brake, where the evidence tended to show that the defect complained of could not have been discovered in applying the brake, but only in letting it off, a charge requested by the defendant that, "If the jury believe from the evidence that the brake worked properly when applied by Binion, (plaintiff) and that no one else handled it or touched the same, the fact that he fell or was thrown from said train is not proof of any defect in said brake" is properly refused.

10. *Charge of court, as to burden of proof on plaintiff to show diminished earning capacity.*—In an action for personal injuries, it was proper to refuse to charge that plaintiff must show that his capacity for making a living had been diminished, and must furnish the evidence on which the jury are to calculate the amount of compensation to be allowed him; and also to refuse to charge that if the evidence shows that the capacity of plaintiff for earning support was not diminished by the injury sustained, then the jury can only award nominal damages, where the evidence shows that plaintiff lost one of his arms and considerable time through the accident.

APPEAL from Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

[Louisville & Nashville R. R. Co. v. Binion.]

This was an action on the case, brought by the appellee, E. M. Binion, against the appellant, the Louisville & Nashville Railroad Company, to recover damages for personal injuries, alleged to have been inflicted upon the plaintiff, while in the employ of the defendant as a brakeman, by reason of the negligence of the defendant or its employés.

Most of the facts of the case, as shown on the present appeal, are sufficiently stated in the opinion. Against the objection and exception of the defendant, the plaintiff, as a witness in his own behalf, and other witnesses for the plaintiff were allowed to testify to the pain and suffering of the plaintiff occasioned by the injury sustained.

The court, in the general oral charge to the jury, instructed them as follows: "The measure of damages would be the loss of time which the plaintiff sustained, if you find that he is entitled to recover, and also the pain and suffering which he underwent by reason of this injury, and the permanent disability." The defendant duly excepted to so much of the general charge of the court as instructed the jury that they could assess damages for the pain and suffering of the plaintiff.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give the charges as asked by it: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe the evidence of Binion, the plaintiff in this case, they will find for the defendant." (3.) "There is no evidence in this case which shows an improper inspection of the cars in the train on which plaintiff was injured." (4.) "There is no evidence in this case which shows a negligent inspection at Mobile of the train on which plaintiff was injured." (5.) "If the jury believe from the evidence, that the brake worked properly when applied by Binion, and that no one else handled it or touched the same, the fact that he fell or was thrown from said train is not proof of any defect in said brake." (6.) "The court charges the jury, that proof that a car in the South & North Alabama Railroad at Montgomery had a limber brake staff did not prove that that was the car from which Binion fell." (7.) "The plaintiff in this case can only recover compensation for the injuries sustained, and

in estimating such compensation the jury can not consider the pain and suffering which the plaintiff underwent." (8.) "The plaintiff must show that his capacity for making a living has been diminished, and must furnish the evidence on which the jury are to calculate the amount of compensation to be allowed him." (9.) "If the evidence shows that the capacity of plaintiff for earning a support has not been diminished by the injuries sustained, then the jury can only award nominal damages."

There was a verdict in favor of plaintiff, assessing his damages at $5,000, and judgment accordingly. At a subsequent day of the term, the defendant moved the court to set aside the verdict and judgment and to grant a new trial on the following grounds: (1) The verdict was contrary to the law; (2), the verdict was contrary to the evidence; (3), the verdict was contrary to the charge of the court; (4), the court erred in refusing each of the charges requested by defendant; (5), the damages awarded by the verdict of the jury were excessive. The court overruled this motion, and the defendant duly excepted thereto.

The present appeal is prosecuted by the defendant, who assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHARLES P. JONES, for the appellant.

THOS. H. WATTS, for the appellee.

HARALSON, J.—1. When this case was here before, —98 Ala, 576,—it was tried on a complaint which alleged, generally, that the plaintiff's injury was caused by a defect in the ways, works, machinery and brakes connected with and used on the train, on which the plaintiff was injured, and the special averments of defects were, in substance, that the dog, ratchet chain, rod, or shoes of the brake or brakes on said car, were defective or so worn as to be inoperative and insufficient for the purposes for which they were attached to the car; that the lever attached to the brake-beam was broken or worn, so that when used, it failed to act properly, and that plaintiff, while engaged in and about his duties as brakeman and trying to perform the duties required of him,

as such, was thrown from the top of said car, his right arm was cut off, and he was damaged thereby, &c. After reciting in the opinion, the testimony given to the jury which tended to prove the facts connected with the disaster, the court said: "It will be seen that there is an entire absence of proof of any defect in the brake, or in its workings, which caused, or could have caused the brake to stick, or to be difficult to let off,—an entire absence of proof of any fact, attendant upon the release of the brake, which could have tended to throw plaintiff from the car. According to his testimony, he fell when the brake was released, but he proves no fact which connects his fall with the liberation of the brake. The inference from his entire testimony is just as reasonable, that the brake stuck from being put up too tight, or that he fell from losing his balance or footing, or that he was jerked off by retaining too long his hold on the wheel, when the brake was let off, or that his fall was caused by a defect in the machinery. There was no fact in the testimony which tended to solve this perplexing inquiry; and, the burden of proof being on plaintiff, it was his duty to furnish some proof of some fact, which tended to show the machinery was defective. We think he failed to do so." It was therefore held, that the defendant was entitled to the general charge.

2. On the return of the cause to the court below, the plaintiff was allowed to file an amended complaint, in which he alleged, that after having set up brakes as he was required to do, he was ordered by a signal from the engineer to let them off; that he attempted to do so, and one of the brakes, on top of the train, was defective by reason of having a limber brake-staff, and that by reason of said defect in the said brake, when put on or applied, it became stuck, and it was dangerous to let it off; that plaintiff did not know that the brake was defective, but the defendant knew of, or could have discovered it by the use of ordinary diligence, which it negligently failed to exercise, before starting the train out; and that in attempting to let off the said brake with said limber staff, the plaintiff, without fault on his part, was thrown from said train, by reason of said defect in said brake, and was thrown between the cars, and his right arm was cut off, and the plaintiff suffered, thereby, great pain and suffering, and loss of time, to his damage of $10,000.

There was no demurrer to this amendment, but a motion was submitted, to strike out that part of it, which sought a recovery on account of pain and suffering, which motion was overruled and the defendant excepted. It will be seen that this record presents a different case, on the pleadings from the one formerly before the court, and the proofs were also different, as we shall see.

3. The plaintiff introduced evidence tending to show, that the accident occurred at or near Bayou Sara, near Mobile, on the night of February 7th, 1890; that he had applied the brakes on his section of the train,—there being two other brakemen on the other sections,—to slow it up according to regulations in passing the draw of a bridge; that the engineer after passing the draw gave the signal to let off the brakes, and that in attempting to obey the order, he came to a car that was jumping and jerking; that he made two unsuccessful attempts to disengage the brake on this car, and the engineer blew to let off the brakes, a second time, and finally he set his lamp down, which to this time he had on his arm, and threw all his weight against it, and it threw him between the cars. To use his own language,—as he related the facts of the occurrence,—"He set the lantern down beside him, and tried with both hands, and threw his weight against it, and it came off; that the brake released or came off very suddenly; that there was a jerk, and it threw him off as quick as if you popped your fingers." He also stated, that it was stuck, tightened up, became fast; that it struck him in such shape, that he fell in a whirl; that he did not fall off but was thrown or jerked off; that when he set up the brake, it set up like all the balance, —some 4 or 5,—of them, and when he returned to it, the car was jumping or jerking, and it seemed to be a great deal tighter than when he left it, and that it was stuck up so tight, that when he released it, it threw him off; that he did not call for help to release the brake; thought he could do it himself, and after the injury, and not before, he heard them speaking of having to get one or two men to help in releasing a stuck brake, but he never saw it done; that when he set up the brake he did not discover anything wrong about it; that he had only been braking since December, 1889,—for about two months,—and before that, had no experience. There

was no evidence that the company had ever given him any instructions about the use of the limber brake, or notice of its dangers.

Plaintiff offered the evidence of an expert railroad man and car inspector, who testified to facts tending to show, that a stuck brake, such as plaintiff described, was caused from the staff of the brake being made of iron that was too small; that a stuck brake was caused, generally, by the staff being limber, and if locked up too tight, it would bend, and, as the evidence tended to show, the brake with such a staff, when put up, would, as the motion of the car increased, climb the wheel towards the top and become fast, the staff having bent and yielded to the motion of the brake upwards, and when let off, it turned loose rapidly, and with force, and, sometimes, could not be released except from the bottom of the car; that when the staff was stout enough, it would not bend, and this climbing of the wheel by the brake would not occur; that such brakes were to be found on all railroads, and were not discarded as defective, on account of the limber rod, but that they were dangerous in the hands of an inexperienced brakeman, who did not understand letting them off; that a man had to turn one loose quick, or there would be danger of his being jerked off, but that they were used every day, without accident, by those who understood how to use them;—that there was nothing to indicate a stuck brake in its application; —it was only in letting it off that it was detected.

4. The defendant's evidence tended to show, that the limber staff was not rejected from use on railroads, for being defective and dangerous, and a witness by the name of Hicks, who had been a brakeman for thirty-three months, testified, that this kind were considered the best brakes on a road, because they gave to the pressure, which a stiff staff would not do, and a train can be stopped quicker with them, because as he stated, "it gives to the pressure, and you can get more swing at the brake, than with a stout staff." He also testified that there was no special danger in them, if the brakemen used proper care.

It was further shown, that the train was inspected by a car inspector at Mobile, before it started out, and the inspector stated that he saw no defective brakes on any of the cars; but on cross-examination he said, that he

inspected from the sides and did not remember that he went on top of the cars at all, and that he knew nothing about a stuck brake, put up and let off by hand, but did know when an air brake sticks.

The defendant offered other evidence tending to show, that the car on which plaintiff was injured, was not brought through to Montgomery and there inspected, but was left at Flomaton, and that a car inspected at Montgomery, on which a limber staff was found, was not the one from which plaintiff was thrown. There was evidence, however, competent for the jury to consider, as tending to show, that this might have been the same car.

5. From the foregoing, together with what may be incidentally added, we may dispose of the errors assigned. The 1st, 6th, 7th, 13th and 14th assignments, raise the question, whether the pain and suffering to which the plaintiff was subjected from his injury, constituted an element of damage, proper to be considered by the jury in rendering a verdict. This question was passed on in the *M. & O. R. Co. v. George*, 94 Ala. 222, which was a case of damage to an employé, where it was held, that "where the injury is permanent, the plaintiff, in actions of this character, may recover compensation for the disabling effects of the injury, past and prospective; and, in estimating the damage, the loss of time, and the incapacity to do as profitable labor as before the injury, as well as the mental and physical suffering caused by it, are pertinent and legitimate factors. See also *Richmond & Danville R. Co. v. Farmer*, 97 Ala. 141.

6. The second assignment of error is based on the question, which the court allowed to be answered, "What did your family consist of," to which witness replied, that he had a wife and three children. In allowing this answer, the court erred. The damages sued for, are for the injury inflicted on the plaintiff, and not on his family, and for which the law allows him compensation, no more and no less in case he is single, than if married, and the father of a child or children. The recovery is for his benefit solely.—*Penn. R. R. Co. v. Roy*, 102 U. S. 460; *Railway Co. v. Douglass*, 69 Texas, 697; *Driess v. Frederick*, 57 Texas, 70; *Pa. R. R. Co. v. Brooks*, 57 Penn. 344; *Pittsburg F. W. & Co. v. Powers*,

74 Ill. 341; *Chicago v. O'Brien*, 65 Ill. 160; *Kansas P.
R. R. Co. v. Pointer*, 9 Kan. 620; *Dayharsh v. Hannibal
& N. J. R. Co.*, 103 Mo. 579; *Kreugziger v. N. R. R.*, 73
Wis. 158; *Stockton v. Fry*, 4 Gill (Md.) 406; *Ware v.
Cartledge*, 24 Ala. 626; *Bivins v. Campbell*, 71 Ala. 293.

7. The third assignment is,—"The court below erred
in allowing plaintiff to testify, what time his father-in-
law got to him." The witness did not answer, when
his father-in-law got to him, and, therefore, no damage
was done, even if the question were illegal. The same
thing is true of the questions the alleged answers to
which are made the basis of the 9th and 10th assign-
ments.

8. The 4th assignment,—based on the question,
"Was it a train from Mobile, or stated to be from Mobile,"
is without foundation even if erroneous, since there was no
answer to it, and no exception reserevd. Nor was there
any exception reserved, on which to base the 5th assign-
ment.

9. The 8th assignment is without merit. Whether
the car on which Binion was injured was brought
through to Montgomery and inspected by Reed or not,
can make no difference, if the evidence satisfied the jury
he was injured from a defective limber-staff brake,—as
alleged in the complaint,—which might have been an-
other car. And Reed testified that he had no instruc-
tions to take the limber staff brakes off, and he passed
them as all right, when he found them on cars.

10. The question,—"Isn't it a fact, that when a
brake gets stuck, it lets off violently and suddenly?",
was objected to, and the court overruled the objection,
to which defendant excepted. The answer was, "When
a brake becomes tight, after it is put up, it throws off
with more force, when you let the dog out of the ratch-
et." The answer given was not a direct response to the
question propounded, for it does not appear that a brake
may not become tighter than when first set up, without
becoming stuck, and there was no objection to the an-
swer as made. But, the question was a proper one.
The complaint claimed that the injury resulted from a
brake letting off suddenly and violently. The witness
was shown to be an expert, and the plaintiff was enti-
tled to the benefit of his experience, to prove this allega-
tion of his complaint.

11. There was no error in allowing the question to the witness, Hicks,—"Is there or not danger of a man being thrown off a car, by reason of the limber brake having stuck, on account of a limber brake?" On what ground the objection was made, is not stated, and for that reason, it might. have been overruled. Besides, the answer given, was not to the question asked, and there was no objection made to the answer as given. But, after all, why was the plaintiff not entitled to the benefit of this expert witness' experience, on this issuable fact?

12. It has been seen, that there was evidence tending to show the allegation of the complaint, that the plaintiff was injured by reason of a defective brake-staff, and that by proper inspection, it might have been discovered by the inspector at Mobile. Brown, the inspector, himself testified, that he did not go on top of the cars to do the inspecting, and was not acquainted with brakes stuck by the use of the hands, and Reed an expert, testified, that there was nothing to indicate, when a brake was applied, that it was stuck, but that fact became apparent only, when the brakeman attempted to let it off, which, if true, indicated that Brown's inspection at Mobile, from the sides and not from the top of the train, was, at best, imperfect.

There was evidence tending to show, that limber staffs applied to brakes were more dangerous than stiff ones, in the hands of an inexperienced brakeman; that plaintiff was inexperienced and did not know the danger he was encountering, in releasing this brake, and there was an absence of evidence to indicate he was instructed in its use, by the company, or warned of its peculiar dangers, when not properly handled.

While it is true that a railroad company is not under obligation to its employes to discard the old and adopt all the new appliances that come along, because the new are less dangerous than the old, yet, where mechanical devices, such as hand-brakes, are in use, and some of them have stiff and others limber staffs, differing from each other only in the size of their staffs, and the limber ones are shown to be inherently dangerous in the hands of inexperienced brakemen, who do not understand how to handle them, it certainly becomes the duty of the employer to adopt and use the less dangerous kind, or if

not, to warn the inexperienced operator, placed in charge of the more dangerous, of their dangers, and thus do what is reasonable and proper, to prevent his being injured in their use.—*Bivins v. Geo. P. R. Co.* 96 Ala. 327-7; s. c. 15 So. Rep. 517: *L. & N. R. Co. v. Boland*, 96 Ala. 632; *Wilson v. L. & N. R. Co.* 85 Ala. 269; Ray on Negligence of Imposed Duties, § 145.

In *Williams v. S. & N. A. R. Co.* 91 Ala. 640, we said, "A duty devolves upon the employer to instruct his employes, and more especially if they are minors, and without experience in the duties and dangers of the business, before directing them to perform any duties attended with danger.—"*Mary Lee C. & R. Co. v. Chambliss*, 97 Ala. 178. The duty of the company, in cases of latent defects, to explain, is the same whether the servant be a minor or an intelligent adult. 96 Ala. 632.

13. All these questions then,—of the character of this brake; whether it was a limber-staff brake or not and whether defective and dangerous or not, or one which might have been properly retained in use and not discarded; whether plaintiff's injury resulted as the proximate cause of the alleged defect; whether it was not discovered and remedied owing to the negligence of this defendant, and, in a word, whether, under the facts of this case the defendant was negligent and the plaintiff was injured thereby, without by his own negligence, proximately contributing to his own injury, were questions which ought properly to have gone to the jury. Charges 1, 2, 3 and 4 were, therefore, properly refused. Charge 5 was erroneous. The evidence tended to show, that the defect complained of, could not have been discovered in putting the brake up, but only in letting it off, and is otherwise misleading and erroneous. No. 6 is misleading. It did not matter, whether the car in the shops at Montgomery was the one from which plaintiff fell or not if he was thrown from another, in the manner and under the circumstances set up in the complaint, which there was evidence tending to show. There is no merit, as we have shown in No. 7. The 8th and 9th were properly refused. The loss of plaintiff's arm in the accident, his loss of time and his pain and suffering, were data upon which the jury might base their verdict, and the giving of these charges would have tended to impress the jury that such was not the fact.—*Mobile &*

*Ohio R. Co. v. George*, 94 Ala. 222. There was no ex-
ception to the refusal of the court, to give charge No. 19.

For the error pointed out, the judgment of the court
below is reversed and the cause remanded.

Reversed and remanded.