# Kansas City, Memphis & Birmingham Railroad Company *v.* Foster.

### *Action against Railroad Company for Wrongul Ejection of Passenger.*

1. *Action against common carrier for wrongful ejection of passenger; when motion to strike certain portion of the complaint properly overruled.*—In an action against a railroad company by a passenger to recover damages for his wrongful ejection where it is averred in the complaint that the plaintiff stated to the defendant's agent at Waco, Texas, that ne wished to purchase a ticket from Waco to Birmingham, and upon the agent delivering said ticket he stated in reply to plaintiff's inquiry that it was a ticket to Birmingham, and that it subsequently developed that instead of giving him a ticket with Birmingham as his destination, he gave him a ticket with a destination many miles from Birmingham in the State of Mississippi; and that at the time defendant's agent at Waco sold plaintiff his ticket the agent knew that yellow fever was prevailing in portions of Mississippi, and knew of the danger and inconvenience of going through that por-

tion of the State of Mississippi which the defendant's road passed, that at the time the plaintiff was ejected from the train he had not money enough to purchase a ticket from his place of ejection to Birmingham, and the defendant's conductor knew this fact; the further averments in said complaint as to the great inconvenience and mortification and alarm which the plaintiff suffered from being put off the train in Mississippi at a point where there was a quarantine station, and that he suffered great fear and uneasiness because of the supposed prevalence of yellow fever, are material and are wrongs which are known by common experience to be the natural and usual sequence of being put off a train at such a place; and, therefore, a motion to strike such averments from the complaint is properly overruled.

2. *Wrongful ejection of passenger; liability of succeeding carrier.* Where a person in Texas purchases a ticket from a railroad company for the purpose of going to a place in Alabama, and receives from the initial carrier a number of coupon tickets, one for his passage over the road of the first and the others as passports over the lines of succeeding carriers, the first carrier or its agent selling the ticket is considered as the agent for the succeeding carrier; and for injuries or damages wrongfully or negligently inflicted upon the passenger while upon the train of a succeeding carrier, the latter is liable.

3. *Same; same.*—If, by mistake of an agent of a railroad company a passenger in purchasing a ticket is not furnished with a proper ticket evidencing his right to be carried to his destination, for which he pays, his right still remains; and if for want of requisite evidence of that right another servant or agent or employe of a railroad company refuses to carry such passenger without the payment of another fare, there is a breach in the contract entered into between the passenger and the common carrier, and the former has a right of action against the latter to recover all damages resulting from such breach.

4. *Same; same; measure of damages.*—In an action by a passenger against a common carrier for the breach of a contract entered into between them, by reason of the failure of the common carrier to carry the passenger to his place of destination as he contracted for, the damages recoverable in such case are not only the cost of transportation from the place where the passenger was ejected to his place of destination, but may include also reasonable compensation for the in-

dignity put upon the passenger, and may also embrace recompense for the pain and suffering of both body and mind which resulted from such wrongful act.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This was an action brought by the appellee, Edwin H. Foster, against the Kansas City, Memphis & Birmingham R. R. Co., to recover damages for the alleged wrongful ejection of the plaintiff from one of the defendant's trains. The complaint contained six counts. Under the opinion on the present appeal, it is only necessary to set out the third count of the complaint, which was as follows: (3.) "The plaintiff further claims of the defendant the sum of eighteen hundred ($1,800.00) dollars as damages, because of the following state of facts: and plaintiff avers that on, to-wit, the 13th day of September, 1897, plaintiff applied to and paid defendant's agent at Waco, in the State of Texas, whose name is to plaintiff unknown, for a ticket from Memphis, in the State of Tennessee, to Birmingham, in the State of Alabama, over defendant's railroad extending between those points. And the plaintiff avers that defendant's said agent, instead of furnish plaintiff with a ticket from Memphis to Birmingham, as it was his duty to do, negligently furnished plaintiff with a ticket from Memphis to Byhalia, a point on defendant's said road in the State of Mississippi between Memphis and Birmingham.

"And plaintiff avers that the ticket which he received from defendant's said agent was quite long, consisting of several coupons and containing a great deal of printed matter, that when said ticket was delivered to him by defendant's said agent he asked said agent if he was sure said ticket was to Birmingham, that in reply said agent stated that it was all right for Birmingham and pointed out to plaintiff the word 'Birmingham' between punch marks on several of the coupons composing said ticket; and the baggage master at the Waco depot having (upon having said ticket exhibited to him) checked plaintiff's

trunk from Waco to Birmingham on said ticket; and plaintiff, having had little experience with tickets of this kind, and being at that time hurried in order to be ready to leave on the train for which he had purchased said ticket, received said ticket without further examination, feeling assured that it was such as he had asked for, and got upon the said train without observing that the said ticket was not correctly made out from Memphis to Birmingham.

"And plaintiff avers that at about nine o'clock p. m. on to-wit, the 14th day of September, 1897, he boarded, at Memphis, Tennessee, defendant's passenger train, which was to run from Memphis to Birmingham, for the purpose of coming to Birmingham. And plaintiff avers that when defendant's agent who was in charge of said train (whose name is to plaintiff unknown) came to take up the fare, plaintiff delivered to him the ticket which the defendant's said agent at Waco had furnished him as aforesaid. And the plaintiff avers that upon examining said ticket, the defendant's said agent in charge of said train found that it was a ticket from Memphis to Byhalia, a point on defendant's road in the State of Mississippi, between Memphis and Birmingham; that it was not to Birmingham, as plaintiff had been informed, and as he believed up to that time. And plaintiff avers that defendant's said agent in charge of said train would not allow plaintiff to travel to Birmingham on said ticket. And plaintiff, not having sufficient money with which to pay the fare from Byhalia to Birmingham, defendant's said agent put plaintiff off of the said train at Byhalia in the State of Mississippi.

"(And plaintiff avers that when he was put off it was about ten o'clock at night, was during the time when the yellow fever was prevailing in many parts of the country, including that in which Byhalia in situated, and the town of Byhalia was quarantined against all other places.) (When plaintiff was put off of said train as aforesaid he was met by an armed officer and other citizens of Byhalia, who told him that he should not enter or stop at Byhalia, and commanded him to proceed immediately on his journey on foot, and upon plaintiff's

hesitating to do do so, greatly frightened, abused and mortified plaintiff by their harsh and severe language and treatment of him.) (And plaintiff avers that it was with the greatest difficulty and after much trouble, delay, opposition, alarm and mortification to himself that he obtained leave to pass the night at Byhalia and he was forced and required to leave the town the following morning.) And the plaintiff avers that the defendant's said agent, when he sold the plaintiff the said ticket knew that the yellow fever was prevailing, and knew of the danger and inconvenience of making one's way through the State of Mississippi through which said defendant's said road passes. And plaintiff avers that he had not with him at that time sufficient funds with which to purchase a ticket or pay the railroad fare from Byhalia to Birmingham, and the defendant's agent, who was in charge of said train, knew this likewise, when he put plaintiff off of said train. (And plaintiff avers that being unacquainted with any one in Byhalia, he suffered great inconvenience, hardship and mortification from the lack of money as aforesaid, and it was with great difficulty, delay and trouble and only by pledging and depositing as collateral security certain valuables which he had with him, that he was able to obtain sufficient, and then barely sufficient, money with which to pay his expenses and fare to Birmingham.) And plaintiff avers that by and from being wrongfully put off said train, as aforesaid, he suffered great fear and uneasiness because of the supposed prevalence of yellow fever in that locality and his exposure thereto.

"And plaintiff avers that he had previously ordered his mail sent to Tuscaloosa, Alabama, where it was awaiting him and where he had intended to go immediately upon his arrival in Birmingham. And plaintiff avers that being put off at Byhalia as aforesaid, so delayed him in arriving at Birmingham, that when he did at last arrive at Birmingham, he had not time to go to Tuscaloosa as he had intended, but was detained in Birmingham by business as he would not have been detained had he not been put off of defendant's train at Byhalia and his arrival in Birmingham delayed as

aforesaid. And plaintiff avers that there were awaiting him at Tuscaloosa letters of great importance, informing him of the illness of his wife who was in the State of Colorado, and plaintiff avers that by being put off of defendant's said train as aforesaid, the receipt of said letters were delayed, and he was prevented from providing promptly for having his wife, who was among strangers, properly nursed and treated, that the delay in such provision increased and aggravated his wife's illness and caused her to have to remain during a long illness in the State of Colorado, instead of coming home to her family, and increased greatly the expense which her illness entailed on plaintiff. And plaintiff avers that the said delay as aforesaid, caused his wife to have a much more severe and serious spell of illness than she would have had had the plaintiff been able to provide promptly for her nursing and treatment, as he could and would have done had he not been wrongfully put off of defendant's train as aforesaid; and the increased severity of her illness has caused and forced plaintiff to expend large sums of money in and about having his wife treated, nursed and cared for and has seriously and permanently injured, weakened and undermined the health of plaintiff's wife.) By all of which plaintiff has been damaged in the sum to-wit: eighteen hundred $1,800.00) dollars and, therefore, he sues."

The defendant moved to strike the portions of the third count of the complaint which are in parentheses. The portion of said count to which motions to strike were overruled are set out in the opinion. The motion to strike was sustained as to the other portions which are in parentheses. The defendant pleaded the general issue and also filed a plea setting up the contributory negligence of the plaintiff in that he failed to read or notice with sufficient care and attention his ticket. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "If the jury believe from the evidence that the plaintiff was forced to leave the train at Byhalia by reason of the negligent

act of the ticket agent at Waco, provided you find from the evidence such agent to be defendant's agent, they will return their verdict in his favor and assess his damages at such sum as will reasonably compensate him for any additional expenditure of money, incurred by plaintiff on account of such expulsion, for any physical discomfort or inconvenience and for any mental anguish, indignity, humiliation, or annoyance which the jury may find from the evidence proximately resulted to the plaintiff on account of such mistake on the part of the agent at Waco—provided the jury find from the evidence that the agent at Waco was the agent of defendant." (2.) "While the jury cannot assess any damages on account of the expulsion from the train, taken alone and of itself, they may assess such damages as the jury may find approximately resulted to the plaintiff from the negligent act of the Waco agent—provided you find from the evidence such agent to be defendant's agent—including expenses, any physical discomfort or distress, and any mental anguish, distress, annoyance, or humiliation or indignity, which resulted as an immediate consequence of having to leave the train at Byhalia."

The defendant separately excepted to the giving of each of these charges, and also separtely excepted to the court's refusal to give each of the following charges requested by it: (1.) "The court charges the jury that what happened to the plaintiff after he left the train is not the proximate result of the mistake in the ticket and for such happenings the plaintiff cannot recover in this action." (2.) "The court charges the jury that if they believe the evidence, they must find for the defendant." (3.) "The court charges the jury that if they believe the evidence, they cannot find for the plaintiff under the third count of the complaint." (4.) "The court charges the jury that if they believe the evidence, they must find that there was nothing in the character of the expulsion of the plaintiff from the train which tended to humiliate or degrade the plaintiff." (5.) "The court charges the jury that if they believe the evidence they cannot find that the defendant was guilty of negligence in putting

the plaintiff off the train where quarantine regulations were in force, if they believe from the evidence that such regulations were in force there." (6.) "It was the duty of the plaintiff to submit to all reasonable and proper quarantine regulations after·he was put off the train, and for such he is not entitled to an award of damages." (7.) "If you believe the evidence, you must find that the ticket agent issuing the ticket to the plaintiff at Waco, Texas, was not the agent of the defendant." (8.) "The court charges the jury that it was the duty of the plaintiff before being ejected from the train, to have done all that a reasonable and prudent and careful man would have done under the circumstances of the situation to have properly avoided expulsion from the train." (9.) "You are not authorized under the evidence if you believe it, to award to the plaintiff any more than the money or value he expended in procuring a ticket·from Byhalia to Birmingham." (10.) "The court charges the jury that if they believe the evidence the plaintiff is only entitled to recover the price paid for his ticket from Byhalia to Birmingham, and reasonable compensation for the trouble, delay and inconvenience he suffered in his effort to reach Birmingham from Byhalia." (11.) "The court charges the jury that if they believe the evidence, they must find that in issuing the ticket to the plaintiff at Waco, Texas, the ticket agent, issuing such ticket, was in the performance of no duty he owed to the defendant; and for his negligence in issuing such ticket the defendant is not liable." (12.) "The court charges the jury that if they believe the evidence, they must find that the ticket agent at Waco, Texas, in issuing the ticket to the plaintiff was in the performance of a duty he owed to the St. Louis and Southwestern Railway Company and for any mistake of such agent in the issuance the plaintiff has a right of action against such railway company, and not against the defendant." (13.) "The court charges the jury that if they believe the evidence they must find that the defendant had fully performed all the duty he owed to the plaintiff when it carried him safely to Byhalia, Mississippi."

There were verdict and judgment for the plaintiff, assessing his damages at $300. Thereafter the defend-

ant made a motion for a new trial, upon the ground that the verdict of the jury was contrary to the law and the evidence, that the damages assessed were excessive, and that the court erred in its rulings upon the charges requested. This motion was overruled and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reesrved.

WALKER, TILLMAN, CAMPBELL & PORTER, for appellant.—The appellant is not liable to the appellee for the mistake of the agent of another railroad company at Waco, Texas. Ray in his work on Negligence of Imposed Duties of Passenger Carriers, says: "A company selling a through ticket over the other roads is liable for the mistake of its agent in omitting to stamp the place of destination." See also *Griffin v. Utica & Black River R. R. Co.*, 41 Hun. 448.

But even if it should be held that the appellant company is liable for the mistake of the agent who sold the ticket, plaintiff's recovery in this action must be limited to the cost of transportation between Byhalia and Birmingham, together with expenses incurred by him at Byhalia.

The great weight of authority seems to be that it is the duty of a passenger when additional fare is demanded of him to pay the additional sum and resort to his action for its recovery—and the action should be one for the breach of contract of carriage.—*Penn. R. R. Co. v. Connell*, 18 Am. & Eng. R. R. Cases 339 (and note;) *Chicago, B. & Q. R. R. v. Griffin*, 68 Ill., 499; *Frederick v. Marquette H. & O. R. Co.*, 37 Mich. 342; Ray on Negligence of Imposed Duties of Passenger Carriers, p. 202; *McKay v. Ohio River R. Co.*, 9 Lawyer's Rep. Ann. 132; *Musher v. St. Louis I. M. & T. Co.*, 23 Fed. 326; *Hall v. Memphis & C. R. Co.*, 15 Fed. 57; *Petric v. Penn. R. Co.*, 42 N. J. Law 449; *Bradsaw v. South Boston R. R. Co.*, 133 Mass. 407.

HENRY A. JONES, ROBISON BROWN and HENRY B. FOSTER, *contra*.

HARALSON, J.—The complaint contained six counts. The ones numbered two and five were withdrawn and abandoned by plaintiff, and the court instructed the jury, at the instance of defendant, that they could not find for the plaintiff under the first, fourth and sixth counts. We need not, therefore, consider any of the rulings of the court on motions to strike certain parts of these counts, and on the demurrers interposed to them. There was left alone in the complaint, the third count, on which, after rulings on motions to strike certain parts thereof had been overruled and others sustained, issue was taken and the cause tried.

1. The portions of said count, which the defendant moved to strike and which were overruled were, (1), "And plaintiff avers, that it was with the greatest difficulty and after much trouble, delay, opposition, alarm and mortification to himself, that he obtained leave to pass the night at Byhalia, and he was forced and required to leave the town the next morning." (2.) "And plaintiff avers, that when he was put off, it was during the time and when the yellow fever was prevailing in many parts of the country, including that in which Byhalia is situated, and the town of Byhalia was quarantined against all other places." (3.) "And plaintiff further avers, that by and from being wrongfully put off of defendant's said train, as aforesaid, he suffered great fear and uneasiness because of the supposed prevalence of yellow fever in that locality, and his exposure to it."

The count contained the averment, that the defendant's agent at Waco, Texas, sold him his ticket, and when he sold it to him, said agent knew that the yellow fever was prevailing, and knew of the danger and inconvenience of making his way through the State of Mississippi, through which defendant's said road passed; that plaintiff had not with him at that time sufficient funds with which to purchase a ticket, or pay the railroad fare from Byhalia to Birmingham, and defendant's agent who was in charge of said train knew this fact, when he put plaintiff off of said train.

It is sometimes difficult to determine what, in law,

is and what is not proximate cause of injury. In *Armstrong v. Montgomery St. Ry. Co.*, 123 Ala. 223, the rule was stated to be, "That a person guilty of negligence, should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind."—*L. & N. R. R. Co. v. Quick*, 125 Ala. 553; *Western R. Co. v. Mutch*, 97 Ala. 194. Here, the wrong committed by the agent at Waco, and the alleged damage, are known by common experience to be naturally and usually in sequence, and we are impressed, that the court committed no error in overruling the motion to strike the parts of the complaint objected to.

2.   There are a great many errors assigned, but appellant's counsel very correctly state in brief, they each substantially raise one or the other of two propositions, that the appellant is not liable to appellee for the mistake of the St. Louis & Southwestern Railway Company's agent at Waco, Texas, or, if it should be held that appellant is liable for the mistake of such agent, appellee's recovery in this action must be limited to the cost of transportation between Byhalia and Birmingham.

The first inquiry is, was the ticket agent at Waco, Texas, the agent of the defendant in selling the plaintiff his ticket from Memphis to Birmingham, as is alleged he was.   It appears that the two roads,—the one from Waco to Memphis, and the other from that point to Birmingham,—were connecting lines and that the plaintiff purchased a coupon through ticket from Waco to Birmingham.   In answer to interrogatories propounded by plaintiff to defendant, the company answered, that the conductor on defendant's road, did receive from plaintiff on the 14th September, 1897, a ticket or coupon from Memphis to Byhalia, said ticket or coupon purporting to have been issued by the St. Louis & Southwestern Railway Company; that it was impossible for it to state whether defendant had, prior to that time, placed on sale

at Waco, tickets over its railroad from Memphis to Birmingham; that defendant itself, did not place such tickets on sale at Waco, and had no officer or agent at that point; that a railroad company frequently issues and places on sale, tickets reading from points on its line to points on the lines of other roads, and often, with coupons reading over several lines of roads between initial point and destination; that defendant could not say that it knew that tickets like the one received by said conductor, were on sale at Waco; that it, however, did know, that the St. Louis & Southwestern road sometimes issued and placed on sale, tickets with coupons attached, reading to points on the line of defendant, and that that road collected the value of the entire ticket, remitting to defendant the amount due it, and such tickets had been issued and placed on sale by said St. Louis & Southwestern Company, prior to September 14, 1897.

The general rule prevailing in this country, as is well understood is, where there are connecting roads as here, that in the absence of a special contract, or some relation between them, each is liable only for a loss or injury on his particular line or route.—*M. & W. P. R. Co. v. Moore,* 51 Ala. 394; *M. & E. R. Co. v. Culver,* 75 Ala. 587; *Jones v. C. S. & M. R. Co.,* 89 Ala. 376; *Ga. Pacific R. Co. v. Hughart,* 90 Ala. 36.

In the *Southern Express Co. v. Hess,* 53 Ala. 19, it appeared that the Adams Express Company and the Southern, connected at a point from which the one secured goods destined for points on the line of the other, and it was held, that this fact, constituted the one company the agent of the other, as to such freight, and its consignor and consignee and if the company finally delivering the goods does not deliver them in the condition in which they were received by its agent,—the company who issued the bill of lading,—it must account for the injury. The same rule is in reason applicable in the sale of tickets to travellers over connecting lines. Hutchinson states the rule in such cases to the same effect, that "When the passenger has received from the carrier a number of coupon tickets, one for his passage over the route of the first, and others as passports over

the lines of succeeding carriers, * * * such tickets
are held not to import a contract on the part of the first
carrier, from whom they are received, to be responsible
for the carriage of passengers beyond its own line. In
such cases, the first carrier is considered rather in the
light of an agent for the succeeding carriers, than as un-
dertaking for the faithful discharge of their duty, and
the coupons as in the nature of separate tickets on be-
half of the successive carriers, and binding upon them
in the same manner as if issued by themselves." He
cites numerous authorities to sustain the text.—Hutch.
on Carriers, § 578.

In this case, the defendant's own evidence, with noth-
ing in conflict with it, is sufficient to sustain the agency
of the Waco ticket agent, on behalf of defendant, to
sell the ticket to plaintiff. The fact that defendant had
no general agent or office at that point, and itself, did
not place tickets there for sale, is a matter of no conse-
quence, if the other road with defendant's approval acted
in this behalf for it. It was shown, the defendant rec-
ognized and ratified the agency in receiving the ticket
from plaintiff in favor of his fare on its own line, from
Memphis to Byhalia.

3. "The law, settled by the great weight of authority
is, that the face of the ticket is conclusive evidence to
the conductor of the terms of the contract of carriage
between the passenger and the company * * The
passenger must submit to the inconvenience of either
paying his fare or ejection, and rely upon his remedy in
damages against the company for the negligent mistake
of the ticket agent."—4 Elliott on Railroads, § 1594.
The author adds: "It does not necessarily follow, how-
ever, that the railroad company may not be liable where
the passenger has, in fact, a right to his passage
at the ticket rate, and he is afforded no opportunity to
get a ticket, or is misled, or given a wrong or defective
ticket by the company's agent, or the like." Hutchinson
taking the same view, holds, on the authority of cases he
cites, that in the action for the recovery of damages sus-
tained, the action must be for a breach of the contract.—
Hutchinson on Carriers, p. 674, § 580, n. Mr. Elliott,

referring to the authorities which held that the passen-, ger's remedy is an action for breach of the contract,—. without denying the right to sue in contract,—says: "It must be that some of the cases to which we have just referred are contrary to the weight of authority, in hold- ing that the only remedy is an action for breach of the contract, and in stating the measure of· damages, but whether the action be in contract or in tort,—for the breach of a contract or for the violation of a duty im- posed by law,—the gist of the action cannot well be the expulsion of the traveler where there is no unnecessary force in accordance with the rules of the company, when he has no ticket or evidence of his right to transportation valid on its face, or such as those rules reasonably re- quire, and refuse to pay his fare. The wrong lies back of that, and it is well settled, that a complaint proceeding upon one theory, will not authorize a recovery upon an- other and entirely distinct and independent theory." Elliott on Railroads, § 1594.

Mr. Freeman in note to *Commonwealth v. Power,* 7 Met. 596, s. c. 41 Am. Dec. 465, 475, says: "If by mistake of one of the officers of the company, he is not furnished with a proper ticket or check, evidencing his right to be carried to his destination, his right, nevertheless re- mains, and if for want of the requisite evidence of that right, another servant of the company refuses to carry him without another payment of fare, the contract is broken, and he has a complete right of action for all damages resulting from such breach  *   *   *   He (the traveler) should either pay the fare demanded or quit the train; and in either case we think he ought to re- cover, as part of his damages, reasonable compensation for the indignity put upon him by the company through the default of its servant," etc.—*McGhee & Fink v. Rey- nolds,* 117 Ala. 119.

4. The count in this case is treated by defendant in the demurrer interposed, as one in contract and not in tort. Generally, the damages to which a passenger is entitled who has been injured by the negligence of the carrier, are measured by the rule of compensation; but, as Mr. Hutchinson observes, "the elements which enter

17c

into the question of compensation are so various, and in themselves so uncertain, that it furnishes in most cases only a rule for approximation of the actual damage, and must, after all, be left to the sound discretion of those whose province it is to decide the amount. Certain principles, however, have been settled as to what may be properly included within the meaning of the terms compensation which will serve as guides in the calculation. One of these rules is that the compensation of the injured party will not be confined to his mere pecuniary loss, but may embrace recompense for the pain and suffering of both body and mind which have resulted from the injury."—*Western U. T. Co. v. Adair*, 115 Ala. 441; *L. & N. R. R. Co. v. Binion*, 107 Ala. 645.

We hold, therefore, that the measure of damages, is not limited, as contended by defendant, to the cost of transportation from Byhalia to Birmingham.

It may be proper to add, that we have found it unnecessary to decide in this case, whether the plaintiff is confined for such damages as he claims to a suit on the contract, such as is admitted this one is, and cannot sue in tort, since it is nowhere disputed that an action in contract may be maintained.

The only demurrer to the third count, was that it joined with an action in tort as set up in other counts, the third being in contract. But this objection cannot be considered, since all the other counts, in the progress of the trial, were either withdrawn by plaintiff, or the court charged there could be no recovery on them, as was stated in the first part of the opinion.

5. We have considered the only errors assigned, which have been insisted on in argument, except on the overruling of the motion for a new trial; and we have found nothing, which in our judgment would justify us in setting the judgment aside, on any of the grounds urged..

Affirmed.