# Seaboard A. L. Ry. Co. v. Patrick.

## Injury to Passenger.

### (Decided May 12, 1914. 65 South. 437.)

1. *Carriers; Connecting; Interstate Commerce Regulation.*—Section 36 of the Interstate Commerce regulations is applicable only to through fares to or from points to or from which no joint fare is published, hence, it did not validate a ticket for interstate transportation over a prohibited route in accordance with the filed tariffs, where there was in force at the time a duly published joint rate over a permitted through route, although the rate charged was the sum of the initial carrier's local rate and a joint rate, and prior to the sale of the ticket, a joint circular had been issued, but not filed, establishing the through route and joint rate for which the ticket was sold.

2. *Same; Passenger Tickets.*—A connecting carrier cannot legally make the initial carrier its agent to sell a ticket for interstate transportation over a route prohibited by the tariffs filed with the Interstate Commerce Commission.

3. *Same; Ejection; Cause of Action.*—Where an initial carrier sold a plaintiff a ticket over a prohibited route, and the ticket was rejected by the conductor of the connecting carrier because of its invalidity, and plaintiff was ejected for refusal to pay fare, except by tender of the invalid ticket, his right of action was against the initial carrier for selling him an improper ticket, and not against the connecting carrier for the ejection.

4. *Damages; Duty to Minimize; Paying Fare.*—Where a plaintiff purchased from an initial carrier a ticket for interstate transportation over a prohibited route, and the connecting carrier refused the ticket because of its invalidity, and plaintiff had sufficient funds with which to pay fare over such portion of the route, it was his duty to do so, and avoid ejection to reduce his damages; hence, he could not recover for delay and added expenses resulting from the ejection, and his return to a junction point from which he subsequently resumed his journey.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by J. J. Patrick against the Seaboard Air Line Railway Company, for damages for failure to transport him as a passenger. Judgment for plaintiff and defendant appeals. Reversed and remanded.

The facts sufficiently appear from the opinion. Charge 10 is as follows:

The court charges the jury that if you believe from the evidence that plaintiff, when the conductor on the Alabama Great Southern Railway Company told him that he would have to pay his fare on the train from Birmingham to Meridian or get off the train, and that he could not honor the ticket presented by plaintiff for passage from Birmingham to Meridian, and that plaintiff at said time had the money to pay said fare and to continue his journey and reach his destination, and that for plaintiff to have paid his said fare under said circumstances would have been a reasonable means of mitigating his damages, and would have mitigated his damages, then it was plaintiff's duty to have paid his fare and continue his journey, and, if the jury believe from the evidence that plaintiff failed and refused to pay his fare and continue his journey, then, for any injury and damage to plaintiff proximately caused by plaintiff's said failure, this defendant would not be liable.

TILLMAN, BRADLEY & MORROW, FRANK M. DOMINICK, and P. P. WALDROP, for appellant. There are three questions of law involved: First, can the prohibited of routings be changed without first filing 30 days notice of the proposed change with the Interstate Commerce Commission, where common carriers in filing a tariff establishing joint through rates attach a notice thereto prohibiting certain routings, which tariff has been approved. This question must be answered in the negative.—Sec. 29, Interstate Commerce Regulation, Tariff Circular, 17a; also sections 34, 36, 37, said regulation; and section 1 in Tariff E, prohibition routes; 16 Interstate Commerce Reports, 303; 23 I. C. C. Rep. 95. The Seaboard was the agent of the Alabama Great Southern, and not responsible for acts beyond its own line.—K. C. M. & B. v. Foster, 134 Ala. 244; Elliott on

[Seaboard A. L. Ry. Co. v. Patrick.]

R. R. sec. 1596. An agent becomes personally liable where he had no authority to act or exceeds his authority.—31 Cyc. 1545. The duty was upon the plaintiff to have paid his fare, and thus minimized his damages.—31 Cyc. 71; Sutherlin on Damages, sec. 38; *Werten v. Coosa & Co.,* 169 Ala. 258; *L. & N. v. Thomason,* 60 South. 506.

A. Leo Oberdorfer, for appellee. From a review of the facts in this case and of the Interstate Commerce act in the light of rule 34-e, it will be seen that the prohib-ited route was not a mere notation, and that no change could be made without the required notice to the commission. Hence, where there is a prohibited route, that prohibition cannot be cancelled by agreement of the carrier without the consent of the commission. The parties treated the prohibited route as a part of the tariff, and the law will so construe it.—36 Cyc. 1139, et seq. Rule 36 was not complied with, but the ticket was sold in violation of the lawfully published tariffs. An agent is liable to third persons for his own torts, in like manner as other persons, and his liability is neither increased nor decreased by the fact of agency.—31 Cyc. 1559.

WALKER, P. J.—On July 3, 1910, in response to the plaintiff's application for a ticket to Dallas, Tex., the defendant's agent at Athens, Ga., sold him a ticket from that place to Dallas, the route specified in the ticket being over the defendant's line to Birmingham, Ala., from Birmingham to Meridian over the Alabama Great Southern Railroad, and from Meridian to Dallas over other roads. On this ticket the plaintiff was carried to Birmingham by the defendant, and there boarded an Alabama Great Southern Railroad train for Meridian.

The conductor of that train refused to accept or honor the ticket for passage over that road, and, on the plaintiff's refusal to pay his fare, he was put off at Bessemer, and from that place returned to Birmingham on a train which he boarded on getting off the train for Meridian. He remained in Birmingham until the next night, then bought a ticket from Birmingham to Dallas, and was carried to his destination on that ticket. At the time of the plaintiff's purchase of the ticket at Athens, the only joint rate provided for a through ticket from that place to Dallas, shown by a tariff on file with the Interstate Commerce Commission, was one at the price paid by the plaintiff shown by a joint passenger tariff, to which the defendant and the Alabama Great Southern Railroad Company were parties, which contained, under the heading "Prohibited Routes," the provision that "tickets must not be sold via the Alabama Great Southern Railroad to Birmingham, thence Seaboard Air Line, nor via Seaboard Air Line Railway to Birmingham, Alabama, thence Alabama Great Southern Railroad." About two weeks before the plaintiff bought the ticket at Athens, the defendant and the Alabama Great Southern Railroad Company issued a joint circular in which it was stated that "effective July 1st, 1910, interchange of passenger at Birmingham, Alabama, traffic will be re-established between the Alabama Great Southern Railroad (Queen and Crescent route) and the Seaboard Air Line Railway for business to and from all points, except no through equipment will be provided." This circular was not filed with the Interstate Commerce Commission, and, at the time the ticket was sold to the plaintiff, no notice had been given to the Commission of any change in the joint passenger tariff above mentioned, and the Commission had not allowed any change in that tariff.

The Interstate Commerce Commission Act, as amended (Fed. Statutes Anno. Supp. 1909, 286), provides in section 6 as follows:

"That every common carrier subject to the provisions of this act shall file with the Commission created by this act, and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroads, by pipe line, or by water when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid, the separately established rates, fares, and charges applied to the through transportation. The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and * * * all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. * * * The provisions of this section shall apply to all traffic, transportation, and facilities defined in this act. * * * No change shall be made in the rates, fares, and charges, or joint rates, fares, and charges which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the Commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares, or charges will go into effect; and the proposed changes shall be

shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection: Provided, that the Commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified, or modify the requirements of this section in respect to publishing, posting, and filing of tariffs, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions. The names of the several carriers which are parties to any joint tariff shall be specified therein, and each of the parties, thereto, other than the one filing the same, shall file with the commission such evidence of concurrence therein or acceptance thereof as may be required or approved by the Commission, and where such evidence of concurrence or acceptance is filed it shall not be necessary for the carriers filing the same to also file copies of the tariffs in which they are named as parties. Every common carrier subject to this act shall also file with said Commission copies of all contracts, agreements, or arrangements with other common carriers in relation to any traffic affected by the provisions of this act to which it may be a party. * * * No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any car-

rier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

An obvious result of the application of the statutory provisions just quoted to the state of facts above set out was that the joint passenger tariff above mentioned was in force at the time the ticket was sold to the plaintiff. That tariff not only did not authorize the sale of a through ticket at a joint rate from Athens to Dallas by the route called for by the ticket which the plaintiff received, but expressly prohibited the sale of such a ticket. It would be in the teeth of the plain requirements of the statute, as to the method to be pursued in making any change in such a tariff, to give to the agreement and joint circular above mentioned the effect of legally authorizing the sale of such a ticket. Its agreement evidenced by the circular in which it joined would not have justified the Alabama Great Southern Company in honoring the ticket if it was sold and issued in violation of law. The main reliance of the counsel for the appellant in their effort to sustain the validity of that ticket is upon the following provision of section 36 of the regulations issued by the interstate Commission governing the construction and filing of freight tariffs and classifications and passenger fare schedules, etc., approved June 28, 1909, effective September 1, 1909:

"A carrier may apply to through fares to or from points to or from which no joint fare is published by using lawfully published bases, local or proportional, in connection with other lawfully published tariffs. Tariffs, containing basing fares must specify clearly the extent and manner of their use," etc.

In this connection there was introduced in evidence a passenger tariff of the defendant, duly filed with the Interstate Commerce Commission, and effective July 1, 1910, showing the fare over its own line from Athens, Ga., to Birmingham, and a joint passenger tariff, also duly filed, and effective July 1, 1910, showing joint through rates from Birmingham to Dallas, and it is pointed out that the price of the ticket sold to the plaintiff was the sum of the defendant's rate for a ticket over its own line from Athens to Birmingham and the through rate from Birmingham to Dallas shown by the joint passenger tariff last mentioned. The regulation referred to conferred no authority to sell such a ticket from Athens to Dallas as was sold to the plaintiff. By its express terms that regulation is applicable only to "through fares to or from points to or from which no joint fare is published." The fact that there was in force at the time a duly published joint rate over through routes from Athens to Dallas rendered the regulation inapplicable to a ticket from the one point to the other. In addition to this, the joint passenger tariff showing the through rate from Birmingham to Dallas contained the provision that "tickets must not be sold via Alabama Great Southern Railroad to Birmingham, Alabama, thence Seaboard Air Line Railway nor via Seaboard Air Line Railroad to Birmingham, Alabama, thence Alabama Great Southern Railroad." The ticket sold to the plaintiff was violative of this prohibition, as it was of the similar prohibition contained in the tariff, which shows the joint rate for a through ticket from Athens to Dallas. At that time there was in effect no joint rate between those points over a through route by way of the defendant's line to Birmingham, thence over the Alabama Great Southern Railroad. The sale of the ticket having been in viola-

tion of the law, it was not good for passage over the latter road, and the conductor of the train on that road was justified in refusing to honor it.

The trial court was not in error in its rulings to this effect. The Alabama Great Southern Railroad Company could not legally make the defendant its agent to sell such a ticket, as the sale of such a ticket was a violation of the law.—31 Cyc. 1214.

The wrong of which the plaintiff was entitled to complain was, not the refusal of the conductor of the Alabama Great Southern Railroad train to permit him to ride on the ticket presented, which was invalid because sold in violation of law, but the act of the defendant's agent at Athens in selling a ticket which purported to entitle him to passage over the Alabama Great Southern Railroad, but which in fact did not entitled him to be carried over that road. There is a conflict in the authorities on the question of the duty of a passenger as to paying the fare demanded of him upon a vehicle upon which he had acquired the right to be carried but had failed to obtain or to retain and exhibit such evidence of that right as the conductor of the vehicle was bound to recognize.—*Sprenger v. Tacoma Traction Co.,* 43 L. R. A. 706, note; 4 Elliott on Railroads, § 1594. A very different question is presented when the carrier has not in any legal way been put under the duty to transport the passenger. When one boards the train of a carrier who has not contracted to carry him, it is plain that he has no right to remain on that train if he refuses, on proper demand, to pay the fare for the trip he desires to take by that train. The ticket from Athens, which the plaintiff had, did not entitle him to passage over the Alabama Great Southern Railroad, and he was bound to pay the proper fare demanded to be entitled to remain on the train which he boarded at Birmingham.

The defendant was liable in damages for its failure to furnish the plaintiff a ticket that would carry him to the destination to which he paid the fare charged.

But, when the plaintiff was confronted with the fact that such liability to him had been incurred, it was his duty to exercise all reasonable and convenient care to prevent the defendant's default from subjecting him to avoidable damages. It was not his right to adopt such a course of action as would unnecessarily add to, rather than diminish, the loss of damage consequent upon the failure of the ticket to carry him to his destination. It was his duty to endeavor to make his damage as light as possible. He should have used all reasonable means to minimize his loss.—*Central of Georgia Ry. Co. v. Morgan,* 161 Ala. 483, 49 South. 865; *Western v. K. B. Koosa & Co.,* 169 Ala. 258, 53 South. 98; *Louisville & Nashville R. Co. v. Thomason,* 6 Ala. App. 365, 60 South. 506; 13 Cyc. 71. When the conductor on the Alabama Great Southern train informed the plaintiff that he could not accept the ticket presented, he also told him that he would have to pay the fare to Meridian or get off. The plaintiff elected not to pay the fare demanded, and to be put off the train at Bessemer and to return to Birmingham, though he stated in his testimony:

"I had sufficient money to pay my way to Meridian and the extra money to go on to Dallas."

So he could have proceeded on his journey without any delay if he had chosen to do so. Evidence of the delays and added expense resulting from the plaintiff's return to Birmingham was introduced, plainly with the purpose of showing items of damage to be considered by the jury. We are of opinion that written charge 10 refused to the defendant stated correct propositions applicable to the evidence in the case, and that the refusal

·of the court to give that charge was error. At least one material feature of that charge was not covered by any of the charges which the court gave. That feature is the proposition stated in the concluding clause of the refused charge, to the effect that the defendant was not liable for any injury or damage to the plaintiff proximately caused by his failure to adopt reasonable means available to him of mitigating his damages. This proposition was a correct one, and was applicable to the evidence in the case. The defendant should not be requir-·ed to make good to the plaintiff losses which he rea-·sonably and readily could have avoided, and it was entitled, on proper request, to have the jury instructed to this effect.

Reversed and remanded.