(117 So. 167)
## LOUISVILLE & N. R. CO. v. CRICK.
### (8 Div. 18.)

Supreme Court of Alabama.   May 17, 1928.

1. **Carriers** ⊂⇒358—Before ejection of passenger for failure to present ticket he must be allowed, on demand, opportunity to pay fare.

Before passenger is ejected from railroad train because of failure to present a ticket he must be allowed, on demand, a reasonable opportunity to pay the cash fare.

2. **Carriers** ⊂⇒373—When carrier recognizes tickets sold over its line by connecting carrier, agent of latter becomes agent of road contracting for transportation.

When a carrier recognizes tickets for transportation of passengers, sold over its line by connecting carrier, the agent of latter becomes, for the purpose, the agent of other road contracting for or effecting transportation.

3. **Carriers** ⊂⇒356(6)—It is passenger's duty to obtain, and ticket agent's to furnish, information to enable passenger, ejected because riding on wrong train, to pursue journey.

It is passenger's duty to obtain, and ticket agent's to furnish, information reasonably necessary to enable passenger, ejected because riding on wrong train, to pursue journey.

4. **Carriers** ⊂⇒359—Passengers must conform to carrier's reasonable rules.

The passenger is bound to conform to reasonable rules and proper regulations of the carrier.

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Carriers ☞373—Connecting carrier's agent selling ticket over defendant's line was defendant's agent, where reciprocal relations of carrying passengers existed.**

In action by passenger ejected from train on the ground that she was not authorized to ride thereon by ticket purchased, *held*, that ticket agent for carrier selling ticket was the agent of defendant carrier from whose train passenger was ejected, where reciprocal relations existed between the carriers as to each carrying passengers of the other on tickets purchased over their lines.

**6. Carriers ☞373—Railroad ejecting passenger presenting return coupon of ticket, sold by connecting carrier, on which coupon return route was not designated, held liable where railroad had accepted ticket for initial trip.**

Railroad ejecting from train passenger holding return coupon of round trip ticket, sold by connecting carrier, on which return coupon the route was not designated, *held* liable for ejection where it had accepted coupon of ticket for initial trip, and passenger informed conductor of such fact and of routing over defendant railroad, and no cash fare was demanded before eviction.

**7. Carriers ☞373—Return coupon on ticket not designating routing over connecting carrier held not void.**

In action for damages by passenger ejected from railroad train because return coupon on round trip ticket was blank as to return routing, *held*, that the coupon was not void because of not designating route, but was merely subject to explanation.

**8. Carriers ☞381(2)—In action for damages for passenger's ejection on ground round trip ticket was not routed over line, evidence of defendant railroad's acceptance of tickets on going trip held admissible.**

In suit by passenger ejected from railroad train on ground her return trip ticket did not provide for travel on such connecting carrier's lines, evidence that on the initial trip defendant railroad had accepted the ticket and other such tickets *held* admissible.

**9. Evidence ☞451—Oral evidence to elucidate patent ambiguity in railroad return coupon held not inadmissible as varying written contract by parol.**

In action by passenger for damages for having been ejected from train, oral evidence tending to elucidate patent ambiguity in round trip railroad ticket return coupon *held* not inadmissible as varying written contract by parol evidence.

**10. Carriers ☞358—Where railroad cannot sell stated ticket because unlawful, conductor cannot do so by collecting fare (49 USCA § 6).**

Where, under 49 USCA § 6, U. S. Comp. St. § 8569, and the passenger tariffs of 1910, a railroad cannot sell passenger ticket embodying certain terms and conditions, conductor of train cannot do so by collecting cash fare from passenger.

**11. Principal and agent ☞92(1)—Principal cannot do by agent that which it is illegal to do personally.**

An act that cannot be done by the principal because of its being illegal cannot be done for him by an agent.

**12. Carriers ☞381(2)—In action for damages for ejection from train, another passenger's testimony as to conductor's statement, at time of ejection, of reason for act held admissible.**

In action for damages by passenger because of ejection from railroad train, evidence given by another passenger as to what conductor told her, at time of the ejection, was his reason for putting plaintiff off the train *held* competent and admissible as bearing on conductor's conduct.

**13. Trial ☞75—Defendant's permitting, without objection, examination of plaintiff's witness on certain matter held to justify cross-examining defendant's witness on same matter.**

Defendant's permitting, without objection, examination of plaintiff's witness on certain matter *held* to justify cross-examination of defendant's witness on same matter.

**14. Carriers ☞384(1)—In passenger's action for ejection from train, refusing to charge that carrier's acceptance of initial part of round trip ticket did not bind carrier to accept return coupon held not erroneous as permitting varying terms of written contract by agent's acts or declarations.**

In action for damages by passenger of railroad train for ejection therefrom on ground ticket did not provide routing over such railroad, court's refusing instruction that "the fact, if it be a fact, that defendant accepted the going coupon of the ticket held by plaintiff did not bind the defendant to accept returning coupon of ticket and plaintiff as passenger on such ticket" *held* not erroneous as being in violation of rule precluding varying written contract by acts or declarations after the contract.

**15. Trial ☞295(1)—Portions of oral charge will on review, be considered in context and with whole charge.**

Portions of an oral charge to which exceptions were reserved will, on review, be considered in their context and with the whole of said charge.

**16. Carriers ☞384(1)—Charge as to law of waiver or estoppel to deny return trip routing over defendant carrier's line, where carrier had accepted plaintiff as passenger on initial trip, held not erroneous.**

In action by railroad passenger for ejection from train because return coupon of round trip ticket did not state routing over such line, court's charge, that, "Although this ticket on the face had 'via ——' thereon, if it had been accepted previously by the defendant railroad company as a valid ticket, then, gentlemen, the defendant would be estopped from saying that on the 17th day of April, she never had the right to ride thereon from Calera," *held* to present no error.

17. Carriers ⊚⟹381(2)—In action for ejection from train, evidence of passenger's showing agent her ticket before he directed her to board train held admissible.

In action by passenger for having been ejected from defendant's train because her round trip ticket coupon did not show routing over such line, evidence that plaintiff showed agent of such carrier her ticket before boarding train *held* not error, since duty to inquire or direct is plain under rules of law.

18. Evidence ⊚⟹121(2)—In passenger's action for ejection from train, that passenger exhibited ticket to carrier's agent and received directions before boarding train held admissible as res gestæ.

In action by passenger for damages for having been ejected from defendant's train, that plaintiff had exhibited her ticket to defendant's agent before boarding train and agent directed her to board train, *held* admissible as part of the res gestæ.

19. Carriers ⊚⟹352—When train conductor is betrayed by authorized agent of carrier into injuring passenger, passenger may count on conductor's act as against defendant railroad for act of defendant's alter ego.

When the conductor of a train is betrayed into an act of injury to a passenger by the mistake or misconduct of another authorized agent of carrier acting within the scope of his authority, passenger may count on the act of the conductor as against the defendant carrier. for the act of defendant's alter ego.

20. Carriers ⊚⟹384(2)—Evidence held to warrant refusal of charge for defendant carrier in passenger's action for wrongful ejection from train.

In passenger's action against railroad for damages for having been ejected from train because return coupon of round trip ticket did not show routing over defendant's line, evidence *held* to warrant court's refusal of charge that, "If you believe the evidence, you cannot find for plaintiff on counts 1, 2, or 3 of the complaint," where counts 1, 2, and 3 alleged in general the purchase of round trip ticket from connecting carrier, and routing over defendant's line, and ejection from train.

Appeal from Circuit Court, Limestone County; O. Kyle, Judge.

Action for damages by Leola Crick, suing by her next friend, Oliver H. Crick, against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Affirmed conditionally.

Charges A and 9, refused to defendant, are as follows:

"Explanatory Charge A. The court charges the jury that the fact, if it be a fact, that defendant accepted the going coupon of the ticket held by plaintiff would not bind the defendant to accept the returning coupon of the ticket and the plaintiff as a passenger on said ticket."

"(9) The court charges the jury that, if you believe the evidence, you cannot find for plaintiff on counts 1, 2, or 3 of the complaint."

The following is the remittitur entered in this case:

"To Hon. R. F. Ligon, Clerk, Supreme Court:

"Whereas, in the above-styled cause the appellee, in the trial court, obtained a judgment against the appellant for $1,000 damages; and whereas, on May 17, 1928, the Supreme Court affirmed said judgment upon the condition that the appellee enter a remittitur of all damages in excess of $600: Now, therefore, comes the appellee and hereby remits the sum of $400, being the amount in excess of $600, as aforesaid."

Sanders & Woodroof and J. G. Rankin, all of Athens, for appellant.

The ticket is the sole and conclusive evidence of the contract for transportation between the conductor and passenger. L. & N. v. Maxwell, 190 Ala. 47, 66 So. 669; McGee v. Reynolds, 117 Ala. 413, 23 So. 68; L. & N. v. Thomason, 6 Ala. App. 365, 60 So. 506. Each coupon of a ticket constitutes a separate contract. Auerbach v. N. Y. C., 89 N. Y. 281, 42 Am. Rep. 290; L. & N. v. Maxwell, 190 Ala. 47, 66 So. 669; Spencer v. Lovejoy, 96 Ga. 657, 23 S. E. 836, 51 Am. St. Rep. 152; Nichols v. Sou. Pac., 23 Or. 123, 31 P. 296, 18 L. R. A. 55, 37 Am. St. Rep. 664; 5 R. C. L. 153; 18 L. R. A. 55; 28 L. R. A. 774. Verbal declarations of agents after sale of ticket will not bind the company, in absence of proof that he was authorized to vary in such manner the contract, and such authority will not be presumed. 10 C. J. 708. It is the duty of a passenger, who has tendered an invalid ticket and been informed of its invalidity, to tender cash fare if he desires transportation, and not of the conductor to demand cash fare. S. A. L. v. Patrick, 10 Ala. App. 341, 65 So. 437; 10 C. J. 748; U. R. & E. Co. v. Hardesty, 94 Md. 661, 51 A. 406, 57 L. R. A. 275; L. & N. v. Thomason, supra. Statements or declarations of agents, not of the res gestæ, or which are merely narrative of past transactions, are inadmissible. L. & N. v. Thomason, supra; M. L. & R. Co. v. Baker, 158 Ala. 491, 48 So. 119; M. & C. v. Womack, 84 Ala. 149, 4 So. 618. A waiver of a defect in a ticket by one conductor will not be binding on another conductor of the same company. 10 C. J. 708, 709; Dietrich v. Penna. R. Co., 71 Pa. 432, 10 Am. Rep. 711; L. & N. v. Dawson, 11 Ala. App. 621, 66 So. 905. The right of action of a passenger holding an invalid ticket and being ejected, where ticket is different from the one purchased or contracted for, is for the negligence of the selling agent. McGhee v. Reynolds, supra; S. A. L. v. Patrick, supra; L. & N. v. Thomason, supra. The damages were excessive. L. & N. v. Sanders, 7 Ala. App. 543, 61 So. 482.

Watts & White and R. E. Smith, all of Huntsville, and Fred Wall, of Athens, for appellee.

The carrier cannot shield itself from the consequences of the act of the conductor when he is betrayed by the mistake or misconduct of another of its authorized agents, acting within the scope of his authority, into the final act of injury to the passenger. Pullman Co. v. Riley, 5 Ala. App. 561, 59 So. 761; L. & N. v. Hine, 121 Ala. 234, 25 So. 857; Hot Spr. R. Co. v. Deloney, 65 Ark. 177, 45 S. W. 351, 67 Am. St. Rep. 913. The ticket is scarcely more than a symbol to show the passenger has entered into a contract with the company by which he is entitled to passage. Pullman v. Riley, supra; L. & N. v. Hine, supra. Where a carrier recognizes tickets sold over its line by a connecting carrier, the agent of the connecting carrier selling the ticket becomes the agent of the other road. K. C. M. & B. v. Foster, 134 Ala. 244, 32 So. 773, 92 Am. St. Rep. 25. A railroad is estopped to deny validity of a ticket. St. L. & S. F. R. Co. v. G. F. & A. R. Co., 213 Ala. 108, 104 So. 33; Chicago, etc., v. Newburn, 27 Okl. 9, 110 P. 1065, 30 L. R. A. (N. S.) 432. Before the conductor may eject a passenger, he must demand cash fare of the passenger. L. & N. v. Hamby, 208 Ala. 75, 93 So. 698. To predicate error on the court's action in reducing the damages and overruling motion for new trial, the motion for new trial must be recast. W. U. T. Co. v. North, 177 Ala. 319, 58 So. 299; Montg. Tr. Co. v. Knabe, 158 Ala. 458, 48 So. 501. The judgment in this case is not excessive. Sou. R. Co. v. Penny (Ala. App.) 114 So. 20.

THOMAS, J. Counts 1, 2, and 3 of the complaint allege that defendant was operating a railroad through certain points, between Decatur and Calera, was a connecting carrier with the Southern Railway Company at Decatur; that plaintiff purchased a round trip ticket from Huntsville to Montevallo and return; that the ticket entitled her to passage from Calera to Decatur on the defendant's train, which she boarded at Calera, and the conductor wrongfully ejected her from said train against her will. The gist of the wrongful conduct charged in each of these counts was that she had a proper ticket entitling her to transportation, and was wrongfully ejected by the conductor, and damaged as alleged.

Plaintiff amended her complaint by adding count No. 4, alleging that defendant was operating a railroad, was a connecting carrier with the Southern Railway Company at Decatur; that plaintiff purchased a ticket from the Southern Railway Agent at Huntsville, applying to said agent for a ticket which would entitle her to transportation over defendant's railroad from Decatur to Calera, and return to Decatur from Calera, the ticket being a round trip ticket from Huntsville to Montevallo; that the said agent negligently failed to properly fill out the ticket so that it would entitle her to transportation over defendant's railroad. The cause of action in this count being based on the negligence of the ticket agent in not properly filling out the blank line on the ticket, and as a result of which caused her ejection from the train, and she averred that she was damaged as claimed. The defense was the general issue.

On the trial of the cause it was shown that defendant did operate a railroad between Decatur and Calera; was a connecting carrier with the Southern Railway Company; had reciprocal agreements as to passengers, etc., and on the same day recognized and honored tickets issued by the agent of the Southern Railway Company at Huntsville. On her return, plaintiff boarded defendant's passenger train No. 2, at Calera, with a companion, and they presented the defendant's conductor the two tickets issued by the Southern Railway Company on a printed form of the Southern Railway Company, one coupon which purported to entitle the holder to transportation "from Calera to Decatur, Ala., via ———"; that the conductor informed plaintiff and her companion that they were on the wrong train, stopped the train about a half mile from Calera, and told said passengers to walk back to the station. It was a disputed question of fact whether plaintiff voluntarily left the train, or whether she left under compulsion by the conductor—the plaintiff testifying that the conductor told them that they would have to get off. The ticket was issued at Huntsville and presented to the conductor on return; was marked, "Destination, Huntsville and return."

The plaintiff was allowed to prove, over the objection of defendant, that the conductor was informed that plaintiff had ridden from Decatur to Calera on said ticket that was honored by the defendant; that its ticket agent at Calera had seen the return ticket and directed her, in response to request, to take the train on which she was riding; that the conductor ejecting her did not demand a cash fare; and after the train arrived and passed through Birmingham said conductor told one of the witnesses he had put plaintiff and her companion off of the train north of Calera, and did not know whether there was any other train by which they could travel from thence to Huntsville that day. The agent for defendant at Calera denied that he saw said tickets (in the first instance) or directed the holders thereof to get on train No. 2; that they did later (on the same day) present the tickets to him, issued by the Southern Railway Company, and he took them up and issued others in lieu thereof and on which plaintiff proceeded to Decatur. The interrogatories, taken under

section 7764 of the Code, contained the further account of the occurrence, as follows:

"Shortly after said train No. 2 left Calera, A. B. Dabbs, conductor of said train, went back through the coaches collecting the tickets, and he came to two girls who had tickets to Huntsville, Ala.; that said tickets were not routed via the L. & N. Railroad Company; that the said Dabbs told the two girls that they were on the wrong train; that the said girls said, 'Yes; they told us our train left at 12:15 p. m.;' that the said Dabbs then pulled the train down and let the girls off near the water tank about one-half mile north of the station at Calera. * * *

"The plaintiff presented a ticket from Calera to Huntsville, Ala.; that said ticket was not routed via the L. & N. Railroad Company, and that after conversation, as reported in answer to interrogatory No. 5 (a), defendant's conductor pulled the train down and let plaintiff off about one-half mile north of station at Calera. * * *

"The agent on duty at Calera, Ala., G. M. Long, as above stated, exchanged tickets with plaintiff when she had walked back to the station at Calera, Ala., after getting off of defendant's train No. 2, as above stated; taking from the said plaintiff a ticket issued by the Southern Railway Agent at Huntsville, Ala., which, as aforesaid, was not routed via the L. & N. Railroad, and giving her therefor a ticket to Decatur, Ala., routed via the L. & N. Railroad Company."

The evidence also tended to show that plaintiff was compelled to walk about a mile to the station, carrying her luggage; the weather was warm; the railroad track rough; she became frightened and was delayed in reaching her destination; her shoes were damaged; that she suffered physical pain.

The jury returned a verdict in favor of plaintiff for $1,500, and, on motion to set aside the verdict and grant a new trial, the court ordered the verdict set aside and a new trial granted, unless plaintiff remitted all damages over $1,000, and if said remittitur was filed, then the motion for a new trial was overruled. Plaintiff filed the remittitur.

There was some evidence of aggravating circumstances as to the place the young girls were put off or that plaintiff was humiliated; and evidence (or the inference) that the conductor was acting in good faith in putting plaintiff off and for the purpose of correcting the error of plaintiff in getting on what he termed the wrong train. The conductor's account is as follows:

"My train got to Decatur on time that day and made connection with the Southern; the Southern leaves Decatur for Huntsville at 3:15; I said to these girls, 'Ladies, you are on the wrong train;' I told them that they were on the wrong train and would have to get off; that they were on the wrong train and they would have to go back and get on the Southern train; I saw that they were two young girls; I was routing them correctly; they were on the sec-

ond day coach; * * * I did not ask these young ladies to pay cash fare; if it had been an L. & N. ticket I would have let them ride; I did not ask them to pay any cash fare; I did not question them about where they had been; I knew they had got on the train; I didn't see on the tickets that they had ridden to Montevallo and were on their way to Decatur; I didn't see then on the tickets, 'Destination, Montevallo and return;' I see that now; I saw that it was on a Southern ticket form; I have honored many a ticket on a Southern form, round trip tickets sometimes; I did not know that Mr. Wilson was agent for the Southern Railway at Huntsville; I stopped these young ladies so that I could direct them right; there was no woods there; it is not far from the station; I did not call on these girls to pay any cash fare."

The court charged the jury, to which exceptions were taken to the oral charge, as shown by the bill of exceptions, as follows:

"During the course of the oral charge in this case to the jury, the court instructed the jury as follows:

"'I charge you that if you find from the evidence, to your reasonable satisfaction, that she was directed by the authorized agent of defendant at Calera to take that train, and if the L. & N. Railroad Company accepted her on that ticket from Huntsville to Montevallo, if on its face it purported to be a return ticket, then, gentlemen, she had a right to return thereon as a passenger on said ticket, and if defendant before that had recognized the ticket as being valid by transporting her as a passenger thereon to Montevallo, then the conductor had no right to eject her from said train.'

"The defendant, before the jury retired, reserved an exception to the above-quoted portion of the court's oral charge.

"During the course of the oral charge by the court to the jury the court instructed the jury as follows:

"'Although this ticket on its face had "via ——" thereon, if it had been accepted previously by the defendant railroad company as a valid ticket, then, gentlemen, the defendant would be estopped from saying that on the 17th day of April, she never had the right to ride thereon from Calera.'

"Before the jury retired to consider their verdict, the defendant reserved an exception to the above-quoted portion of the court's oral charge."

[1] It may be said that before a passenger is ejected, because of the failure of presenting a ticket, he must be allowed, on demand, a reasonable opportunity to pay the cash fare. This was not done in the instant case, nor was it voluntarily offered by the passenger. L. & N. R. Co. v. Hamby, 208 Ala. 75, 76, 93 So. 698; L. & N. R. Co. v. Johnson, 92 Ala. 204, 9 So. 269, 25 Am. St. Rep. 35.

The defendant carrier recognized tickets sold over its connecting lines by the common carrier in question, from Huntsville to Calera to Montevallo. There were tickets so purchased by Mrs. Jacobs for herself and the two girls, and used by each of these girls on

the initial or outgoing trip from Huntsville by way of Decatur and Calera. On the return trip Mrs. Jacobs proceeded by that way and was delivered at Huntsville in the afternoon; the two girls who were put off the train, had their tickets exchanged at Calera by the agent, and plaintiff and her companion proceeded, at about 7 p. m. the same day, via the L. & N. to Decatur and thence to Huntsville where they arrived late at night.

[2] When a carrier recognizes tickets for transportation of passengers, sold over its line by a connecting carrier, the agent of the latter becomes, for the purpose, the agent of the other road, contracting for or effecting the transportation. Kansas City, M. & B. R. R. Co. v. Foster, 134 Ala. 244, 255, 32 So. 773, 92 Am. St. Rep. 25; Southern Express Co. v. Hess, 53 Ala. 19; Southern Ry. Co. v. Renes, 192 Ala. 620, 68 So. 987.

Defendant's depositions are further to the effect that the Southern Railway Company, a corporation, was at said time a connecting carrier; recognized tickets "properly filled out"; sold tickets to points on its line through the agent of the Southern Railway Company at Huntsville; that it "receives in the regular course of business its proportionate share of the price paid for tickets sold by agents of the Southern Railway Company to points on defendant's line;" and on said date, when tickets were properly filled out, "received in the regular course of business its proportionate share of the price paid for tickets sold by agents of the Southern Railway Company to points on defendant's railroad."

In case of waiver or estoppel (as of failure of signature on a round trip ticket) to deny the validity of the ticket where there was no evidence of the refusal of the passenger to sign, the mere absence of the signature did not render the ticket void. Chicago, R. I. & P. R. Co. v. Newburn, 27 Okl. 9, 11, 110 P. 1065, 1066, 30 L. R. A. (N. S.) 432, 434, 435. In that case the Chief Justice said:

"Plaintiff asserts, and it is not denied, that he was the original purchaser of the ticket, and his possession of it carried with it the presumption of ownership. The manifest purpose requiring it to be signed was to render it nontransferable, and to identify the purchaser, and the mere absence of the signature would not render it void. Walker v. Price, 62 Kan. 327, 84 Am. St. Rep. 392, 62 Pac. 1001; Gregory v. Burlington & M. River R. Co., 10 Neb. 250, 4 N. W. 1025; Kent v. Baltimore & O. R. Co., 45 Ohio St. 284, 4 Am. St. Rep. 539, 12 N. E. 798.

"The company sold plaintiff the ticket to enable him to take passage thereon. It could not with reason accept his money and give to him a contract which its agent knew was void. The requirement of the signature was for the benefit of the company."

In this connection our case of St. Louis & San F. R. v. G. F. & A. Ry. Co., 213 Ala.

108, 112, 104 So. 33, is cited. There freight was delivered for shipment, bills of lading were duly tendered and declined of issue, and, after having received and retained the coal for shipment, it was held, in action for trover, that the duty to issue the bills of lading was upon the carrier, whose failure presented an estoppel setting up the nonissue of such bills of lading. In this connection we may note that it is appellant's insistence that the ticket, "as far as it goes," is the sole and conclusive evidence of the contract for transportation between a passenger who boards a train that does not stop at his destination, and the conductor may require such passenger to leave the train at the first regular stopping place thereto, if there be one; if not, may require fare to the station or stop beyond and on refusal to suffer ejection. This is the usual or general statement of the rule of our leading continuous passage cases. L. & N. R. R. Co. v. Maxwell, 190 Ala. 47, 50, 66 So. 669; Southern Ry. Co. v. Pruett, 200 Ala. 675, 77 So. 49; A. G. S. Ry. Co. v. Carmichael, 90 Ala. 19, 8 So. 87, 9 L. R. A. 388; McGhee & Fink, Receivers, v. Reynolds, 117 Ala. 413, 23 So. 68; L. & N. R. R. Co. v. Thomason, 6 Ala. App. 365, 60 So. 506; Louisville & Nashville R. Co. v. Gaddie, 162 Ky. 205, 172 S. W. 514, L. R. A. 1915D, 705.

[3] And as a complement to this reasonable regulation, is that of the authority and duty of the ticket agent to furnish information on due request by passengers, as may be reasonably necessary to enable them to pursue their journey, and that it is, ordinarily, the initial duty of the passenger to apply and obtain such information as to what train his ticket entitles him to transportation upon, to point of destination, and of the time of its departure. L. & N. R. Co. v. Clark, 205 Ala. 152, 87 So. 676, 14 A. L. R. 695; Southern Ry. Co. v. Pruett, 200 Ala. 675, 77 So. 49; L. & N. R. R. Co. v. Maxwell, 190 Ala. 47, 66 So. 669; Lamb v. Mitchell, 16 Ala. App. 577, 80 So. 151, and authorities.

We should consider the cases cited by appellant, and others, in this jurisdiction, that have application. The case of L. & N. R. R. Co. v. Maxwell, 190 Ala. 47, 66 So. 669, cited by appellant, was where plaintiff procured a ticket from a carrier over its lines between two points thereon, without limitation or designation as to any specific train. He boarded a through train as respects his destination, was advised of that fact, declined to disembark and wait for the local train, was ejected by the conductor at the closest station to destination, and at which the train bearing him stopped—held no denial of the terms of transportation on the ticket, and the course of conduct employed, as to plaintiff, was the mere conformity to a reasonable rule of the carrier as affecting its transportation and due conduct of the business thereof.

The case of A. G. S. R. Co. v. Carmichael,

90 Ala. 19, 8 So. 87, 9 L. R. A. 388, was an action for damages by passenger carried beyond destination when traveling by arrangement of the conductor, in violation of a reasonable rule of defendant railroad company, to a nonstop station, and is not applicable to the instant facts.

And the case of L. & N. R. Co. v. Thomason, 6 Ala. App. 365, 369, 60 So. 506, 507, by Judge Walker, makes the following observation of exception to the general rule:

" * * * The ticket is the sole and exclusive evidence to the conductor of the passenger's right to be and remain upon a train," etc. "While this rule does not operate to relieve the carrier of responsibility for the act of its conductor in requiring a change to another train by a passenger who, by another of the carrier's authorized representatives, had been led to suppose that his trip could be made without having to change cars, yet it does put the passenger under the necessity of conforming his conduct to the reasonable requirements of the schedule and regulations found to be governing the operation of the train upon which he is riding, and of changing to another train at an intermediate point when duly informed by the conductor of the necessity of his so doing in order for him to be put off at his destination."

The case of McGhee & Fink v. Reynolds, 117 Ala. 413, 23 So. 68, was an action for ejection from a train where plaintiff purchased a ticket at Decatur to Huntsville and return, the ticket requiring identification as purchaser and validation by the Huntsville agent; this was refused, though duly requested so to do, and, notwithstanding this failure or refusal, plaintiff took passage for return and was ejected. The observation is made that the plea is answer to the counts for the violation of duty to plaintiff by the conductor, but if the gravamen of the action was the misconduct of the Huntsville agent, the plea setting up the attempt to ride on the ticket not signed, dated, and stamped by the Huntsville agent, and this was well known to plaintiff, who then failed and refused to pay her return fare to Decatur, is no answer for the misconduct of the Huntsville agent in such failure or refusal if he was not so justified. This case is different from that before us in the fact that as to the conductor's counts, by its terms, *the ticket was void;* here the return coupons were merely irregular or incomplete. In the former, there was no contract for return until it was identified and validated by the Huntsville agent; in the latter, there was a round trip ticket that was sufficiently definite and binding on the initial trip from Huntsville via Decatur and Calera by way of the L. & N. to Montevallo, and merely indefinite or ambiguous in the blank after the word "via" on the return coupons, but not on the outgoing "contract." It was good for a passage both ways when issued and construed by defendant's agents from Decatur to Calera and Montevallo. The decision in McGhee v. Reynolds, supra, was rested upon the fact that such ticket was void on its face and the passenger refused on demand to pay the fare.

In Kansas City, M. & B. R. Co. v. Foster. 134 Ala. 244, 256, 257, 32 So. 773, 777 (92 Am. St. Rep. 25), for wrongful ejection of passenger, by a succeeding carrier, the pertinent holdings were:

"Where a person in Texas purchases a ticket from a railroad company for the purpose of going to a place in Alabama, and receives from the initial carrier a number of coupon tickets, one for his passage over the road of the first and the others as passports over the lines of succeeding carriers, the first carrier or its agent selling the ticket is considered as the agent for the succeeding carrier; and for injuries or damages wrongfully or negligently inflicted upon the passenger while upon the train of a succeeding carrier, the latter is liable.

"If, by mistake of an agent of a railroad company a passenger in purchasing a ticket is not furnished with a proper ticket evidencing his right to be carried to his destination, for which he pays, his right still remains; and if for want of requisite evidence of that right another servant or agent or employé of a railroad company refuses to carry such passenger without the payment of another fare, there is a breach in the contract entered into between the passenger and the common carrier, and the former has a right of action against the latter to recover all damages resulting from such breach."

This ruling is rested on Southern Express Co. v. Hess, 53 Ala. 19; McGhee v. Reynolds, supra; Hutchinson on Carriers, §§ 578, 580; Elliott on Railroads, § 1594; Freeman, in note to Commonwealth v. Power, 41 Am. Dec. 465, 475.

The same principle was applied in Montgomery Traction Co. v. Fitzpatrick, 149 Ala. 511, 514, 43 So. 136, 137 (9 L. R. A. [N. S.] 851), saying that generally the conductor must rely upon the ticket to determine his action—

"yet all of the authorities recognize that, while in such case there may not be a right of recovery on the ground of a wrongful ejection, yet there can be a recovery for the failure to fulfill the contract to carry, or for the negligence of the agent in giving the wrong ticket or transfer. The gravamen of the second count is the negligence of the conductor on the Electric Park car in tearing the transfer, and the ejection is averred merely as the result of such negligence. The fact that the plaintiff might have sued for a breach of the contract of carriage did not deprive him of the right to sue in case for the negligence. Southern Ry. v. Jones, 132 Ala. 437, 443, 31 South. 501."

[4] The rule announced in Southern Railway Co. v. Pruett, 200 Ala. 675, 77 So. 49, is that it is the duty of passengers before boarding a train to inquire whether a stop is made at the desired destination and so being informed by one in authority and on proper inquiry is misled by acts or statements of its

agents into taking the wrong train, the remedy is to leave the train, seek other transportation, and recover the damages sustained. That is to say the passenger is bound to conform to reasonable rules and proper regulations of the carrier. In L. & N. R. Co. v. Hine, 121 Ala. 234, 237, 25 So. 857, 860, it is declared that the pleading showed no violation of a reasonable rule or regulation, and it is observed:

"In the absence of notice to the plaintiff of such absolute requirement he had a right to assume that the defendant's ticket and telegraphing agent knew his duties and would perform them. If, therefore, as appears from the complaint the plaintiff was induced to board the train and begin the journey disarmed of the written permit by the conduct of the defendant's agent and in reliance upon his advice and his undertaking to give the permit to the conductor, the defendant could not rightfully eject him from the train for failure to exhibit a written permit to the conductor.

"The carrier cannot shield itself from the consequences of misconduct or mistake on the part of one of its agents acting within the scope of his duties which has naturally betrayed another of its agents into the final act of injury to the passenger."

In Pullman Co. v. Riley, 5 Ala. App. 561, 59 So. 761, it is declared:

" 'If travel be his aim, he approaches the ticket agent, informing him of his destination. Paying for the ticket the price demanded under the tariff of charges, he has done all required of him to secure his right of transit over the railway to the point or station over which he requested a ticket.' S. A. N. A. R. Co. v. Huffman, 76 Ala. 492, 52 Am. Rep. 349; L. & N. R. Co. v. Hine, 121 Ala. 234, 25 South. 857.
* * *

"Of course, if the traveler, when he accepts the ticket, knows or has reason to believe that the ticket handed him by the agent is not the ticket for which he called, he will [not] afterwards be heard to complain that he received an improper ticket."

[5-7] The ticket agent for the Southern Railway Company at Huntsville, by reason of the reciprocal relation between them—the Southern Railway Company and defendant—and the assumption by defendant of the carriage in question, on the initial or round trip, per "contract," was defendant's agent for the sale of the tickets in question; the lawful and prescribed rates were duly paid therefor, on a Southern Railway form for the round trip, expressly stated on every part thereof. It bore the words of destination, "Montevallo and return;" "from Calera, Alabama to Decatur, Alabama, via ———;" "from Decatur, Alabama to Huntsville, Alabama, via ———;" the number 33446 was upon each coupon. The most that could be said of the return coupons was that the same were patently ambiguous or irregular in the absence of the detached contract in defendant's agent's possession. They were not void,

merely subject to explanation. The irregularity of ambiguity was that of the negligence of the defendant's agent issuing the same, or its agent detaching the outgoing or contract without a due notation to subsequent agents to which the return coupon would be detached. Recovery was allowed for the acts of the conductor for such irregularities and defects in L. & N. R. Co. v. Hine, 121 Ala. 234, 25 So. 857; Pullman Co. v. Riley, 5 Ala. App. 561, 59 So. 761; and L. & N. R. Co. v. Thomason, 6 Ala. App. 365, 60 So. 506. The ejecting conductor of defendant was fully informed by plaintiff and her companion of the true contract—within its ambiguous terms caused by the blank after via—between the plaintiff and defendant, of its previous construction thereof, thus removing any confusion that may arise from the patent irregularity in the mind and controlling the action of the ejecting conductor. With such knowledge, he failed to demand the payment of the cash fare, as it was his duty to do.

[8] Mrs. Jacobs had testified, without objection, that she bought the two return tickets, had and used "the tickets on the trip down" by way of the L. & N. to Montevallo, and they accepted the tickets after having boarded the train in Decatur on the L. & N. There was no error in allowing her and the other witness to testify that the conductor accepted the tickets and that they rode the train to Calera thereon. We have indicated there was no error presented in assignments 4, 5, 6, and 7.

[9] There was no error in refusing the affirmative instruction requested by defendant as to counts 1, 2, and 3 of the complaint. It had been stated, defendant in answer to plaintiff's interrogatory said that Conductor Dabbs, north of Calera, requested plaintiff's ticket and "told plaintiff she was on the wrong train," and told them the tickets were not routed over the L. & N. This was, in effect, presenting two defenses of negligence—on the *wrong train* and the *wrong road*. This evidence tended to elucidate these issues of fact under a patent ambiguity in the return coupons, where the outgoing contract was explicit, and to corroborate plaintiff in her insistence that she was on the right train on defendant road, as she had averred the facts to show in counts 1, 2, and 3 of the complaint. This testimony did not offend the rule of varying by parol material terms of a written contract. Formby v. Williams, 203 Ala. 14, 81 So. 682.

[10, 11] Appellant cites Seaboard A. L. R. Co. v. Patrick, 10 Ala. App. 341, 349, 65 So. 437, which is not an apt authority. In that case, Patrick purchased a ticket from Athens, Ga., to a point in Texas routed over the lines of the Seaboard A. L. R. Co. to Birmingham, thence to Meridian via A. G. S. R. and to Dallas by other designated ways; the passenger boarded defendant's train in Birmingham, the

conductor refused to honor the ticket, plaintiff refused to pay cash fare when demanded by the conductor, and he was ejected. The opinion indicated and turns upon the fact that the sale of the ticket and the rate or routing was contrary to the ruling of the Interstate Commerce Commission; that if the A. G. S. R. Co. could not sell the ticket to the plaintiff, on such terms and conditions under the Fed. Statutes Anno. Supp. of 1909, § 260 (49 USCA § 6; U. S. Comp. § 8569), and the passenger tariffs of 1910, its conductor could not do so by demanding and collecting the cash fare for it or the defendant. This is obvious; if the sale on its conditions was not authorized by law, the agent—its conductor—could not do this. An act that cannot be done by the principal, being illegal, cannot be done by an agent. 9 Cyc. 465 et seq.; 31 Cyc. 1214. However, the opinion contains a like observation to that in L. & N. R. Co. v. Hamby, supra. Judge Walker observes:

"There is a conflict in the authorities on the question of the duty of a passenger as to paying the fare demanded of him upon a vehicle upon which he had acquired the right to be carried but had failed to obtain or to retain and exhibit such evidence of that right as the conductor of the vehicle was bound to recognize. Sprenger v. Tacoma Traction Co., 43 L. R. A. 706, note; 4 Elliott on Railroads, § 1594. A very different question is presented when the carrier has not in any legal way been put under the duty to transport the passenger. When one boards the train of a carrier who has not contracted to carry him, it is plain that he has no right to remain on that train if he refuses, on proper demand, to pay the fare for the trip he desires to take by that train. The ticket from Athens, which the plaintiff had, did not entitle him to passage over the Alabama Great Southern Railroad, and he was bound to pay the proper fare demanded to be entitled to remain on the train which he boarded at Birmingham. * * *

"When the conductor on the Alabama Great Southern train informed the plaintiff that he could not accept the ticket presented, he also told him that he would have to pay the fare to Meridian or get off. The plaintiff elected not to pay the fare demanded, and to be put off the train."

This assumes that it is the duty of the conductor to demand the fare in a proper way before ejecting the passenger.

In L. & N. R. Co. v. Johnson, 108 Ala. 62, 19 So. 51, 31 L. R. A. 372, fare was demanded of the passenger, who refused in a nonsensical or offensive manner, and he was ejected at a dangerous place where he came to his death by reason of his physical condition.

Appellant cites authorities of a familiar rule that statements of agents are not a part of the res gestæ, but merely narrative of part of the transaction and are not competent as independent evidence of the fact. See Bank of Phœnix City v. Taylor, 196 Ala. 665, 72 So. 264; Teague v. Ala. Coco-Cola B. Co., 209 Ala. 205, 95 So. 883; B. & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546; M. & C. R. R. Co. v. Womack, Adm'x, 84 Ala. 149, 4 So. 618; Mobile L. & R. Co. v. Baker, 158 Ala. 491, 48 So. 119.

[12, 13] The evidence was competent and admissible as bearing upon the conduct of the conductor (with the other evidence) on the question of the damages, if such was found to have been sustained. The record further shows that theretofore, on the redirect examination of plaintiff's witness, Mrs. Jacobs, who testified without objection, "The conductor on that train told me he put the girls off of that train;" and on her cross-examination, defendant asked that witness, "What did he [conductor] say?" To which witness answered:

"He said there was something wrong with the tickets. That they were routed over the Southern. When he came through the train, I asked him why they could not come back on those tickets, and he said, 'They were routed wrong.'"

Thereupon the plaintiff propounded to the witness the following question:

"Did you ask Mr. Dabbs [conductor], in that conversation, what other route, if any, these girls could get to Huntsville?

"The defendant objected to said question because it calls for testimony that is immaterial, irrelevant, and prejudicial. The court overruled the objection of defendant because defendant had brought out part of conversation, and to which action and ruling of the court, the defendant then and there duly and legally excepted.

"A. I asked if there was any train out of Calera that they could get to Huntsville on Sunday afternoon, and he said he didn't know."

This justified the cross-examination in question of the conductor, of which complaint is made.

[14, 15] There was no error in refusing charge A. The portions of the oral charge to which exceptions were reserved will be taken in their context and with the whole of said charge. So considered, there is no error or violation of the rule of verbal declarations of agents after the contract, in the absence of proof of authority to vary its terms or to waive conditions. Boice v. Hudson River R. Co., 61 Barb. (N. Y.) 611. It is stated in 10 C. J. 99, and notes, that a waiver of a defect in a ticket by one conductor as to his portion of the route will not, as a general rule, bind thereafter other conductors, or the failure of other agents of the company is no waiver in nature of estoppel. This is illustrated by cases now selected as typical. A ticket *providing for its use on the day of its date*, punched by several conductors and not retained as to it a succeeding conductor may properly refuse to accept and permit the passage on another date, Burn v. Chicago, B. & Q. R. Co., 153 Ill. App. 319; a ticket calling for a continuous

trip and stipulating that no agent is authorized to modify conditions, and a conductor permitted a stop-over and so indorsed it, the passenger who attempts to resume the journey may be ejected by subsequent conductor, International & G. N. R. Co. v. Best, 93 Tex. 344, 55 S. W. 315, and that a ticket agent has not the implied power, after the sale of the ticket is completed and duties ended in that behalf, by representations which contradict the plain terms of the ticket sold, Hanlon v. Illinois Central R. Co., 109 Iowa, 136, 80 N. W. 223; Boice v. Hudson, etc., Co., 61 Barb. (N. Y.) 611.

Such cases are without application. Here the ticket was sold and issued by the Southern Railway Company at "Huntsville, April 13," of like number as to each coupon (33447): "Destination, Montevallo and return" to Huntsville; the same issued "on account of L. & N. R. R." from Decatur to Calera via L. & N.; it was, as to each coupon form XX5, indorsed, *"Worthless if detached from contract" as to return coupons.* Hence the coupons so indorsed, designated as the "contract," from which it may not be detached without authority; the initial coupons or "contract" on the trip from Huntsville to Calera are specifically indorsed, "On account of L. & N. R. R. from Decatur, Ala., to Calera, via L. & N.," and the conductor was so informed.

[16] The statement of the law of waiver or nature of estoppel stated by the trial court, to which exceptions were reserved, presented no prejudicial error.

[17-19] The fact that plaintiff testified they showed the agent at Calera the tickets before he directed them (and that is denied by the agent) did not present reversible error, since the duty to inquire or direct is plain under the rules of law obtaining. And the exhibition of the ticket was a proper part of the res gestæ of the carrier or the failure thereof, and when the conductor of a train is betrayed into an act of injury to the *passenger* by the mistake or misconduct of another authorized agent of the carrier, acting within the scope of his authority, the passenger may count upon the act of the conductor as against the defendant for the act of its alter ego. Pullman Co. v. Riley, 5 Ala. App. 561, 59 So. 761, given the wrong ticket; L. & N. R. R. Co. v. Hine, 121 Ala. 234, 25 So. 857, failure of agent to deliver permit to ride on freight train; L. & N. R. Co. v. Thomason, 6 Ala. App. 365, 60 So. 506, change of cars or misdirection by the agent.

We have indicated that the case of McGhee v. Reynolds, 117 Ala. 413, 23 So. 68, cited by appellant in support of its contention, is not an authority against the contention of appellee; that the ticket was void on its face for lack of validation. In the case of S. A. L. R. Co. v. Patrick, 10 Ala. App. 341, 65 So. 437, the Alabama Great Southern Railroad Company could not *legally* make the defendant its agent to sell such a ticket "for cash"; the court stated that under these facts, the railroad *"has not in any legal way been put under the duty to transport the passenger."*

[20] There was no error in refusing defendant's charge 9.

The judgment of the circuit court is affirmed conditionally. If, within 30 days, the plaintiff enters remittitur, on the records of this court, of $400, the judgment for the balance of $600, with interest from date of judgment below (but without the statutory penalty of 10 per centum) will be affirmed. Otherwise, the verdict and judgment will be set aside, and the cause remanded for another trial.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ, concur.